# TASLICH v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 4496.   Decided October 3, 1927.   (262 P. 281.)

34

*L. A. McGee,* of Price, for plaintiff.

*Harvey H. Cluff,* Atty. Gen., and *J. Robert Robinson,* Asst. Atty. Gen., for defendants.

CHERRY, J.

While employed by the Lion Coal Company at Wattis, Utah, Janko Taslich sustained injuries from which he died on April 13, 1923. A claim for compensation under the Workmen's Compensation Act, in behalf of Mrs. John Taslich, his alleged wife, who resided in Europe, was made to the Industrial Commission. The claim was dismissed and denied upon the grounds that no authorized application for compensation had been filed within one year from the date of the death of the employee. The plaintiff has brought the matter here for review and contends that the commission

acted without and in excess of its powers in thus dismissing and denying her claim.

The relevant facts are clear. On February 15, 1924, and within one year from the date of the employee's death, an application for compensation was filed in behalf of the plaintiff by one Milka Skrinarich, her friend and countrywoman, who acted voluntarily and without authority from the plaintiff. The lack of authority for filing the application later appearing, objection was made for that reason to the jurisdiction and power of the commission to entertain the claim. Thereafter there was presented to the commission a formally executed power of attorney by the plaintiff to Milka Skrinarich, which purported to ratify and confirm the previous act of Milka Skrinarich in filing the application in behalf of the plaintiff. This power of attorney was executed May 29, 1926, and filed with the commission August 16, 1926. Both dates were more than three years after the date of the employee's death. The act (Comp. Laws Utah 1917, § 3140, as amended by chapter 67, Laws of Utah 1921) provides that:

"Any claim for compensation must be filed with the commission within one year from the death of the deceased."

That a claim must be made by the party entitled to compensation, or by or through some other person legally authorized to act for him, is a plain and necessary requirement. A claim made in behalf of a dependent by a mere volunteer binds neither dependent nor employer, and is a nullity. *N. W. M. & G. Co.* v. *Ind. Comm.*, 313 Ill. 534, 145 N. E. 89; *Western Indemnity Co.* v. *Ind. Acc. Comm.*, 35 Cal. App. 104, 169 P. 261. Under certain limitations, however, an unauthorized act may be ratified by the person in whose behalf it has been performed. Such ratification in a proper case validates the unauthorized act, and is equivalent to original authority for doing it.

It is the contention of the plaintiff that the act of Milka Skrinarich in filing the claim in question, though done with-

out authority at the time, was subsequently ratified by the plaintif, and is therefore entitled to stand as ▮ though authorized in the first instance. The commission held to the contrary. The question is therefore whether the act in controversy was capable of ratification by the plaintiff at the time she attempted to ratify it. Without ratification, the filing of the claim was wholly ineffective and invalid. At the time of the purported ratification the plaintiff could not have filed an original claim, or authorized one to be filed in her behalf, for the reason that the time limited by law therefor had long since expired. The general rule of law in such case is stated in 2 C. J. 473, as follows:

"As a general rule, the ratification of a particular act or contract may be made by one in whose behalf such act or contract has been done or made, if he could have given authority to do the act or enter into the contract in the first instance, and if he still has power to do so at the time of the ratification; otherwise not. * * *

This statement of the rule is supported by numerous cases cited in the footnotes, notable among which is *Mc-Cracken* v *San Francisco*, 16 Cal. 591, 624, wherein Mr. Chief Justice Field says:

"A ratification can only be made when the principal possesses at the time the power to do the act ratified. He must be able, at the time, to make the contract to which by his ratification he gives validity. The ratification is the first proceeding by which he becomes a party to the transaction, and he cannot acquire or confer the rights resulting from that transaction, unless in a position to enter directly upon a similar transaction himself."

This rule was applied in *Rohde* v. *State Ind. Acc. Comm.*, 108 Or. 426, 217 P. 627, wherein a very similar question to the one here under consideration arose, and in which that court said:

"So it is, that not having the right himself to file an application when the Norton letter was written, the claimant was then powerless to ratify the unauthorized act of the company in its attempt to act for him."

There can be no doubt of the necessity and soundness of the rule.

It is contended, however, that the objections to the lack of authority for filing the application were not made in the proper form or time and were therefore waived; that such proceedings were had under the application, which, according to principles of equitable estoppel, ought to preclude the objections from now being urged. A brief reference to the record of the proceedings will illustrate the matter under consideration. John Taslich died as the result of industrial accident on April 21, 1923. On February 15, 1924, an application for compensation in behalf of Mrs. John Taslich was filed with the commission, reciting that "your petitioner is the widow of John Taslich, the person injured," and the application was signed, "Mrs. John Taslich, by Milka Skrinarich, Administratrix of the Estate of John Taslich, Deceased." A hearing of the matter was held at the state capitol before the Industrial Commission, on February 27, 1924, at which there was no appearance by the applicant or by anyone in her behalf. A further hearing was had at Helper, Utah, on March 11, 1924, at which L. A. McGee, Esq., appeared as attorney in behalf of the applicant. At the commencement of this hearing Mr. Knerr, a member of the Industrial Commission, said:

"Now, Mr. McGee, inasmuch as there seems to be some question as to whether or not the widow in this case is alive, the commission desires to have you secure from the widow direct an authorization on her part to you to act for and on her behalf, and it seems the best way would be to take a deposition to ascertain whether she is alive or what."

Whereupon Mr. McGee and two others were sworn and gave evidence, all hearsay, tending to show that the widow of the deceased was alive and living in Serbia, at the time of the death of her husband. The fact, however, was not satisfactorily proved. No other question was inquired into at this hearing. There was no attempt whatever to show

authority from the widow to make the application. In this connection, Mr. McGee testified:

"I instructed her [Milka Skrinarich] to write Mrs. Taslich about two weeks ago, and have her write a letter and authorize and request her to file this petition."

At the conclusion of the hearing Mr. Knerr stated:

"Mr. McGee and Mr. Collins, are you willing to enter into the usual stipulations that depositions may be taken in this case, and in addition thereto that the applicant be made to submit to the commission, through the magistrate or some official in her country, an affidavit that she is alive and when she was married, et cetera?"

After a long delay the depositions of Kata Taslich and others were taken, and the next hearing was held before the commission at Price, Utah, on January 4, 1926, for the purpose of offering the depositions in evidence. The depositions were read in evidence, over the objection of the attorney for the state insurance fund. In her deposition Kata Taslich, the widow of the deceased, testified that she had given no power or authority to Milka Skrinarich to make application for compensation for her. On January 13, 1926, written objections by and in the name of the state insurance fund were filed to the exercise of jurisdiction by the commission upon the ground that no lawful claim for compensation had been filed within time. On February 4, 1926, Mr. McGee filed with the commission a request that the decision of the matter be withheld for 60 days, stating:

"In the deposition of Kata Taslich she stated that she had not authorized the said Milka Skrinarich to file the application. This was probably true, but if the said Kata Taslich had known that the said Milka Skrinarch had filed the application in the name of the said Kata Taslich and for her sole benefit, her answer would, no doubt, have contained a ratification of the said act of Milka Skrinarich."

The decision was postponed for 60 days, and again upon the request of Mr. McGee was postponed until September 1, 1926. On August 16, 1926, the power of attorney containing

the ratification was filed with the commission. On September 2, 1926, the commission rendered its decision denying the claim of Kata Taslich for compensation upon the grounds before stated.

It must be remembered that the Industrial Commission is not a court, and proceedings before it under the Workmen's Compensation Act are not governed by the common-law or statutory rules of practice and procedure applicable to courts. The act itself (section 3149) expressly provides that:

"The commission shall not be bound by * * * any technical or formal rules of procedure other than as herein provided; but may make the investigation in such manner as in its judgment is best calculated to ascertain the substantial rights of the parties and carry out justly the spirit of this title."

Except the application or petition of the applicant, pleadings are not necessary and are generally not filed. *Spring Canyon Coal Co.* v. *Industrial Comm.*, supra. The hearings are informal in manner, time, and place, as indicated by the proceedings in this case. There is no attempt to observe the forms of rules which govern judicial trials. The whole scheme of the Workmen's Compensation Act is designed to work out a speedy adjustment and payment of claims for industrial accidents in a summary and simple manner. To this end the common-law and statutory rules of procedure and evidence are done away with in hearings before the commission. *Petraska* v. *National Acme Co.*, 95 Vt. 76, 113 A. 536. And the strict and formal rules of judicial procedure are as inapplicable to the form and manner of making objections and defenses as they are to the presentation and proof of claims for compensation.

In this view of the matter it cannot be maintained that there was any waiver of the objection relied upon. In reviewing records such as this, we must and do consider the substance and not the form of the proceedings. And to say that the objection here made was not substan-

tially made at the first opportunity, and that those pretending to act for the widow knew of it, is to deny what affirmatively appears in the record. It is equally idle to claim that the widow herself was in any manner misled. It is clear from the record that she had no knowledge, even when her deposition was taken, that Milka Skrinarich was pretending to act for her. She came into the proceedings for the first time when her proposed ratification was presented, and, as before seen, this was more than three years after the death of the deceased.

In this case the employer was insured against liability for compensation by the state insurance fund. Under the act (section 3122) compensation, if awarded, is payable directly out of the fund. So far as the state insurance fund is concerned, we think, as a matter law, that the objection relied on cannot be waived. This court has decided (Spring Canyon Coal Co. v. Industrial Comm., supra) that no waiver of the objection that an application was not made in time could be made by the officials who administer the state insurance fund because it is a public fund, and to permit such a waiver would result in injustice and favoritism, etc. The same reasons obviously preclude the waiver by public officials of any other matter which would defeat recovery against the public fund.

To permit the claim in question to be entertained in the manner proposed would be to disregard plain and necessary essentials in the presentation of claims, and to confuse and delay proceedings which are intended to be simple, direct, and summary.

There is no question whatever of the fact that the alleged dependent made no claim whatever and knew of no claim being made in her name until long after the statutory time for presenting a claim had expired.

Award affirmed.

THURMAN, C. J., and HANSON, District Judge, concur.

HANSON, District Judge, sat in lieu of FRICK, J., deceased.

STRAUP, J. (Dissenting). The petition or application for compensation was entitled "Mrs. John Taslich, Applicant, v. Lion Coal Company, a corporation, Defendant." In the petition it was alleged that the petitioner or applicant was the widow of John Taslich, deceased, and all necessary and jurisdictional facts set forth to entitle her to compensation as a dependent. The petition was signed "Mrs. John Taslich, by Milka Skrinarich, Administratrix of the Estate of John Taslich, Deceased, P. O. Box 143, Helper, Utah." In subsequent orders and in the findings and in the decree the commission, sua sponte, and without motion or request from any one, added " the state insurance fund" as a party defendant with the coal company. Notice of the filing of the application was given and a day set for the hearing. The claim adjuster for the state insurance fund appeared, representing "the defendants."

The deceased, the employee, was injured February 5, 1923, and died as the result thereof April 21, 1923. Before his death the coal company filed a report of the accident and injury with the Industrial Commission giving all necessary information with respect thereto, and paid some compensation to him, which was sent to his wife, the petitioner, in Jugoslavia. After his death Milka Skrinarich, November 19, 1923, was appointed administratrix of his estate, and on February 13, 1924, she filed an application with the commission against the coal company only for compensation in the name of and for and on behalf of the widow. Partial hearings were had on three different days, one of February 27, one March 11, and one August 2, 1924. On these hearings the merits of the application were gone into and considered. Evidence was given, or stipulations were had respecting the material averments of the petition. An agent of the coal company wrote a letter to the commission stating that:

"Some of the boys at the mine had informed us that the wife of John Taslich had died some year and a half previous."

The company was advised to bring forward its witnesses in such respect. None were produced, but testimony was given that Kata Taslich, the petitioner, living in Jugoslavia, was the wife of John Taslich; that they were married some 35 years prior to the hearing, had children, and that the witnesses saw letters in 1921 and 1922 from members of the family stating that she was alive. But the commission was not satisfied with that. On its own motion it directed that the deposition of the widow be taken to show "that she is alive and when she was married," etc., and asked that counsel representing the petitioner consent to the taking of the deposition, which he did.

Now, up to that time no question was raised by any one that the filing of the petition was unauthorized, or that it was not filed by the real party in interest or by any one who did not have the legal capacity to sue or maintain the action. When the deposition was returned, it showed that Kata Taslich, the petitioner, was alive; that she was the wife of the deceased, a copy of the record of her marriage attached to the deposition; and that she was a dependent. There is no dispute as to that. But in answer to certain interrogatories she deposed:

"Q. Do you know Milka Skrinarich? A. I do know; it must be the wrong name. Q. Did you authorize her to act as attorney in fact for you in this proceeding? A. I gave nobody power." That she had forwarded a power of attorney to Mele Errora, "but I will revoke it and give the power of attorney to the consulate of the kingdom of the Serbs, Croats, and Slovenes at San Francisco to represent me."

The deposition was taken August 4, 1925. After it was returned a further hearing was had on January 4, 1926, at which time a fresh counsel appeared for the state insurance fund and on its behalf objected thus, "Now the state insurance fund objects to the introduction of the deposition in

evidence on the ground that the commission has no juris-
diction to hear or decide this matter, for the reason" that
there was no proper application or claim filed within a year
after the death of the deceased and no claim filed in con-
formity with law; and objected to receiving the deposition
in evidence, except that part of it wherein Kata Taslich,
the deponent, deposed that she "gave nobody power" to act
as attorney in fact for her in the proceeding. No objection
was made on behalf of the coal company. The commission,
pro forma, overruled the objection, subject to the filing of
briefs. Later, counsel for the petitioner and the consulate
at San Francisco obtained from the widow a full power of
attorney authorizing the proceeding instituted in her name
by Milka Skrinarich, giving her full power to represent and
act for her in the premises, and indorsed and ratified all
that had been done by and on behalf of her in the cause.
But the commission, in accordance with the contention of
counsel for the state insurance fund, held that the power
of attorney was of no avail and could not relate back to the
commencement of the proceedings, because when the power
was given the statute of limitation had run, and for that
reason, the widow had no power then to file an application;
and thus the commission, as to the applicant, dismissed the
proceeding—in effect, adjudged that there were no depen-
dents and ordered the coal company to pay into the combined
injury benefit fund the sum of $998.40, as by section 3140
of the Industrial Act provided, when, in case of death of
an employee resulting from accidental injury arising out
of or in the course of his employment, there are no depen-
dents.

In the case of *Ban & Kariya Co. et al.* v. *Industrial Comm.*,
247 P. 490, it was held by this court that the state insur-
ance fund is not a body corporate, in no sense an artificial
person or body, and is not a party interested in or affected
by an award of the Industrial Commission, and is not em-
powered or authorized to become a party to any litigation.
The effect of the holding is that the state insurance fund

has no legal entity, and thus making it a party to the proceding added nothing in such respect, and likewise counsel appearing for the fund represented nothing. I thus treat the proceeding as a direct proceeding between the applicant and the employer, the coal company, as the only parties. As the coal company made no objection to any want of authority or legal capacity to maintain the action, and the objection being made only on behalf of the state insurance fund, which·in no sense was a party and had no legal entity, no proper or effective objection whatever was made at any time raising the question of want of authority or legal capacity to maintain the action.

Then the further question is, At what stage of a proceeding may a defendant or defendants, if proper and legal parties, raise the question or want of authority or capacity to sue or that the proceeding was not instituted and maintained by the real party in interest? In all civil proceedings such defect, if it appears on the face of the complaint, must be raised by special demurrer, and if not so appearing, by answer; and, if not raised by either demurrer or answer, is waived. In the case of *Tooele Meat & Storage Co.* v. *Eite Candy Co. et al.*, 57 Utah 1, 168 P. 427, this court said:

"The objection that the plaintiff has not legal capacity to sue, or to maintain or prosecute an action is one that, under all of the Codes, must be taken at the proper time, and in the proper manner or it will be deemed waived. Such an objection is like one that the plaintiff is not the real party in interest. That objection must be made by special demurrer if it appear on the fact of the complaint and if it does not so appear, then advantage of it must be taken by answer, and if not taken either by answer or demurrer the objection is waived. * * * The objection of want of legal capacity to sue is also waived unless made either by answer or demurrer."

Numerous authorities are there cited in support of the proposition.

Bliss on Code Pleadings (3d Ed.) § 407, says that legal incapacity may arise (1) because the plaintiff is not en-

titled to sue by reason of some personal disability, or (2) because he has no title to the character in which he sues; and, after discussing such matters, the author, at section 408a, says:

"It is but reasonable, then, that the statute should require the defendant, if he objects to the plaintiff's demand because he does not show a right to appear in court, to base his objection specifically upon that ground; and I know of no comprehensive phrase that so well describes the ground of objection as a want of legal capacity to sue."

To the same effect is 2 Estee on Pleading, § 3090.

While the Industrial Act does not itself prescribe rules of pleading, yet so far as applicable, fundamentals upon which pleadings and practice are founded are to some extent required to be observed. That is to say, a complaint or application filed before the commission, however informal it may be, still must contain sufficient averments of facts to entitle the applicant to relief and to an award. And while defenses thereto are not required to be pleaded with particularity and completeness, yet if defenses not available under the general issue are desired to be raised they ought to be interposed in some way, and if of a waivable character must be timely interposed, and at least before trial on the merits. A practice, however loose or liberal, ought not to be administered so as to give privileges and advantages to one party not accorded to the other. In other words, the practice ought not to be administered so as to hold the applicant to forms or rules of pleading in some degree, but the defendant to none. There is good reason for holding, as we have held several times, that an applicant is required to tender a petition or an application though informal yet sufficient to show a good cause. There is just as much reason for holding that the employer and his insurance carrier, if a legal entity and suable and properly made a party, are also required to tender whatever triable issue they wish to tender and whatever dilatory pleas or defenses they may have, to tender them before trial on the merits,

or in some way raise them and timely bring them to the attention of the petitioner and of the commission before trial on the merits. Want of authority or capacity to sue, or that the suit is not brought or maintained by the real party in interest are dilatory pleas and defenses and ought and are required to be presented in some form or manner before trial on the merits. If the defect appears on the face of the complaint or petition, it ordinarily ought to be taken advantage of before pleading to the merits; if it does not so appear, then by answer; and if not so done there is no good reason why the claimed defect should not be treated as waived as in such case it is treated and regarded in all other civil proceedings. I see no warrant for any exception here. On the face of the petition it is shown that the application was made in the name of the widow and for and on her behalf by another characterizing herself as the administratrix of the estate of the deceased. Whether the administratrix as such by reason of her office had or had not such authority or capacity was known to the defendant as well when the petition was filed as afterwards. On the other hand, if the administratrix had no such authority or capacity in virtue of her office, then on the face of the petition no authority or capacity of the administratrix in her individual capacity is shown to bring the action for and on behalf of the widow, for it is not shown or characterized by the petition that she brought it in virtue of any power of attorney or other authority either in law or in fact, nor did she subscribe the petition as having any such power or authority. And in either event if it was the desire to challenge the authority it ought to have been done timely, and at least before entering upon the trial on the merits.

However, though the view be taken that the want of legal capacity did not sufficiently appear on the face of the petition, still the rule is just as unbending that such objection was required to be raised in the answer or in some other appropriate manner before trial on the merits, and if not so done it was waived.

Further, as to this. As already observed, the only proper or real defendant in the cause was the coal company, which, at no time, interposed any objection or raised the question of want of authority or capacity, or that the action was not maintained by the real party in interest. And the objection made on behalf of the fund was of no more consequence than though no objection had been made. It cannot successfully be argued that counsel who appeared for the fund appeared for the commission, who, under the statute, has the control and management of the fund, for the commission was not made a party. Under the act an employer may carry his own insurance, or he may carry it with a company or corporation engaged in the insurance business, or with what is called state insurance. An employee or a dependent seeking compensation may make his claim against the employer alone, as here was done, or against the employer and his insurance carrier when the carrier is a legal entity and as such suable. But the state insurance fund is no more a legal entity and suable as such than is a fund of the employer, or of an insurance company or corporation carrying his insurance or the moneys in the office of the state treasurer. When application for compensation is made against the employer alone, his duties and obligations alone are involved, except as his carrier, if a legal entity and if authorized so to do, may be permitted to appear and protect and defend them. But in doing so the carrier is restricted to the defenses and to the rights, duties, and obligations of the employer, and is not permitted to assert or maintain rights or defenses apart from those of the employer. Thus, since the objection was not made for or on behalf of the employer, but only on behalf of the fund—some mere inanimate thing— the objection was of no avail, even had the carrier been a legal entity and suable and had appeared as such, for it had no greater rights in the case than had the employer himself. So, though it be assumed that by counsel appearing and representing the fund he thereby in some way was representing the commission or the state, or

some arm thereof possessing a legal entity, yet in his defense he was restricted to the rights, duties, and obligations of the employer and could not assert rights and defenses apart from those of the employer. In other words, the commission may not make one rule of practice when the employer carries his own insurance or with a private company or corporation engaged in the insurance business, and another rule when the employer carries state insurance, or make it more difficult for an applicant to recover compensation when the employer carries state insurance than when the employer carries his own insurance or with a private company or corporation. The applicant is entitled to have his rights determined against his employer, regardless of who may be his insurance carrier. If the state sees fit to go into the insurance business on the same basis with private companies and corporations engaged in the same business, it, in the administration of the act, cannot be granted privileges and immunities not granted to others in the same business or insist on one rule of practice for it and another rule for others, or render the burden of the employer greater or lighter in the one instance than in the other, or grant him privileges and immunities in the one not granted in the other. In this view of the case the question of ratification is not involved.

But as to the ratification. It, in effect, is said that "a ratification can only be made when the principal possesses at the time the power to do the act ratified," to support which 2 C. J. 473, *McCracken* v. *San Francisco,* 16 Cal. 591, *Rohde* v. *State Ind. Acc. Comm.,* 108 Or. 426, 217 P. 627, and other cases are cited. The principle of law thus generally stated, when properly understood and applied, may well be conceded, but the application of the principle to the matter in hand is quite another thing. In *McCracken* v. *San Francisco,* supra, the common council under the law could sell property of the city only by a valid ordinance and on giving ten days' notice by advertisement before sale, which was required to be a public sale. The ordinance passed by the

council for such purpose was invalid because not voted for by the requisite quorum, and thus the proposed ordinance authorizing sale was rejected. There thus was no ordinance requiring the act to be done. The sale could not lawfully be had without a valid ordinance. The property, however, a public dock, was advertised for sale under the rejected ordinance which undertook to repeal a prior and long existing ordinance creating the dock. The legality of the sale being questioned, the common council passed another ordinance recognizing and adopting the first ordinance, intending thereby to render the sale valid and binding, which second ordinance was passed only one hour prior to the sale. The second ordinance did not itself undertake or purport to sell or authorize the sale of the property or to repeal the ordinance which had created the dock, and the dock could not lawfully be sold without repealing such ordinance. In other words, the second ordinance, passed only one hour before the sale took place, merely purported to impart validity to the rejected ordinance. The court said that:

The second ordinance "is not a law providing for the sale of any property, nor does it purport to be anything of the kind. It does not describe any property, nor direct any sale, or confer authority upon any parties to sell. It assumes that an ordinance ordering the sale had already passed and refers to it for the simple purpose of appropriating certain proceeds of the sale. This assumption imported no validity to the rejected ordinance, which was referred to as if it had passed. The common council could not in this way recall the rejection and give validity to the supposed ordinance. This would be in effect to pass an ordinance by referring to it as passed, or by admitting that it had passed. The common council could pass an ordinance only in one way, and that way by voting for it. To give validity to the sale, a law directing the same was requisite. Nothing else would answer under the charter."

The court said further that the land directed to be sold by the rejected ordinance was set apart and dedicated as a public dock by a previous ordinance which the rejected ordinance purported to repeal. But the repealing section

failed with the rejection of the ordinance, and, while the dedicating ordinance remained in force, no sale could legally be had, and that the second or last ordinance made no reference to the dedicating ordinance and did not purport to repeal it either directly or otherwise. The court further observed that passing the second ordinance only one hour prior to the sale was not a compliance with the law requiring advertising ten days prior to the sale. Thus the court held that receiving and appropriating the proceeds of sale by the land committee was not a ratification because the common council itself had no power to sell the city's land in such manner, and could only do so by a valid ordinance passed for such purpose at public sale on giving ten days' previous notice, none of which was complied with, and, as the council had no power to sell otherwise, it could not ratify a sale of the committee made otherwise.

*McDonald* v. *McCoy*, 121 Cal. 55, 53 P. 421, and *Upton* v. *Dennis*, 133 Mich. 238, 94 N. W. 728, also are cited in support of the general proposition. The effect of the first is that a principal is incapable of ratifying an act of his agent if his own status is so changed that he is no longer capable of doing the act, as where before the attempted ratification he had disposed of the property or interest which was the subject-matter of the agent's unauthorized contract. In the other case it was held that, where, after an administratrix had indorsed a claim belonging to the estate to an agent for collection, the administratrix was discharged and the agent subsequently made a settlement for less than the amount due, a letter written afterwards by the administratrix purporting to authorize such settlement could not confirm the agent's act, as the power of the administratrix to bind the estate and the agent's power to act terminated with her discharge. These cases, of which many more might be cited, sufficiently illustrate what generally is understood by the statement in the texts and cases that the principal may ratify an act done, if he, at the time of the ratification, has the *power* himself to do the act.

However, *Rohde* v. *State Industrial Acc. Comm.*, supra, is also cited. The conclusion there reached may well be conceded, but in some particulars the reasoning of the court and the grounds upon which it is based, so far as reference is made to the ratification, may well be questioned. There, the employer, for and on behalf of the employee, filed an application with the commission because, as stated in the application, the employee himself refused to do so on the asumption that if he did so it would prejudice his right to prosecute a claim for damages in the admiralty court; but the employer, being of the opinion, as also stated in the application, that the employee could not recover in the admiralty court, made application to the commission for compensation for the employee. Here it must be noted that under the Oregon act (Or. Laws, § 6605 et seq.) awards made to employees are paid, not by the employer, but out of a public fund contributed to by employees and employers. Upon notice being given of the filing of the application by the employer, the employee and his counsel notified the commission, in writing that the employee had filed no claim with the commission for compensation "and intends to make none," and in effect repudiated and disclaimed the application made for and on his behalf by his employer, and hence no action was taken on the application so filed by the employer. About three years thereafter, and after the employee was defeated and denied recovery in the admiralty court, he, through his counsel, inquired of the commission the status of the claim before it and "what can be done at this time in this matter to effect a final settlement." Even then no attempt was made to recall the disclaimer and repudiation, nor was there anything stated with respect to indorsing, confirming, or ratifying what the employer had theretofore done. The commission advised "that no valid claim was filed, and that this commission does not have jurisdiction of the claim," and thus refused to entertain any further proceedings. The employee took an appeal to the circuit court. There he testified that he did not file any claim for com-

pensation with the commission, but understood that the company, his employer, had, but that he had not authorized any one to file a claim for him. In reversing the judgment of the circuit court awarding the employee compensation, the Supreme Court held that the employee, under the Oregon act, was required himself to file a claim, that the filing of a claim by his employer did not aid him, and that an "application of the injured employee is the exclusive formula by which the commission gains jurisdiction in any particular case," and that the filing of the claim by his employer for and on his behalf did not suffice, especially since "it carried on its face its own condemnation by the statement that the claimant himself refused to make an application for compensation." Such holding, of course, disposed of the case.

However, reference in the opinion is made concerning the question of ratification, but the court did not hold that there was any claim made of a ratification, or that the employee had even attempted to ratify. What the court said was:

"If there were any evidence of ratification, the person who ratified it, the claimant in this instance, if at all, must be held to have ratified it in its entirety. It is axiomatic that he cannot adopt what is favorable to him and reject the unfavorable part. That is to say, if he ratifies, he says, 'I refuse to make an application.' In effect he declares, 'I approve the statement that I refuse to make application.' "

Certainly; and it is difficult to conceive a ratification of anything which theretofore was absolutely and unqualifiedly repudiated and disclaimed.

Still the court further observed that, when inquiry was made concerning the status of the case, it then was too late to file an original application, and that the employee then "was powerless to ratify the unauthorized act of the company in its attempt to act for him." Such observation was made, notwithstanding the court, in effect, further stated that there was no element of ratification present; that the letter of inquiry as to the status of the case "does not indicate whether he approved or disapproved of the act

of the employer in filing the paper quoted"; and that there is not anything otherwise to show any such approval. A reading of the opinion does not disclose that any claim of ratification was made, and if there had been, the claimant's repudiation and disclaimer of the claim filed by the employer would be a complete answer to any subsequent claim of ratification, especially after electing to prosecute and after having prosecuted his claim in the admiralty court to final judgment.

But, in such respect, the Oregon court called particular attention to the Oregon act and the particulars wherein it was dissimilar from the acts of other states, notably Michigan, New Hampshire, Maine, Illinois, and Texas; that acts of such other states differing from the Oregon act required the employer "to pay compensation directly to the injured employee or to secure the same by insurance at the employer's expense, where the question is directly between the employee and his employer, and the latter being in propria persona could, of course, waive any formality required by the statute, as it was his personal right" (acts of which states in such respect are similar to ours), and that in such case a waiver might well apply. And the court pointed out that, under the Oregon act, the employer is not required to pay compensation directly to the injured employee, that the question of compensation was not one directly between the employer and the employee, and that the fund out of which compensation was had was a public fund, which, under the Oregon statute, is contributed to by both the employee and the employer. Thus, under that statute the proceeding is not directly between the employee and the employer as it is under our statute, but is an application for compensation by the employee to the commission to be paid by it out of the public fund, and not by the employer. So, though it be assumed that the Oregon court was right in declaring that, under the Oregon statute, an employee was powerless to file an application after the statute of limitation had run, yet such a holding has no application under a statute such

as ours, where the employer is required to pay compensation directly to the injured employee or to secure the same by insurance at the employer's expense. It is fundamental that statutes of limitation do not go to or affect the primary right of a cause, but merely the remedy. They are statutes of repose or presumption. Its claim is a personal privilege which a party may waive or may be estopped to assert, and, ordinarily and generally speaking, must be claimed by the debtor himself. A stranger to the claim or demand sued on, though a creditor and injuriously affected by his debtor's failure to set up the statute, cannot himself set it up or compel his debtor to do so.

Thus the petitioner at the time of her ratification had the power, the undoubted right, to file a petition or application for compensation though the statute of limitation then had run. The then filing of a petition would invoke action and confer jurisdiction to hear and determine it just as the filing of a complaint on a promissory note invokes action and confers jurisdiction, though the statute had run. Recovery, of course, may be defeated in each instance by a proper plea or interposition of the statute of limitation, but unless invoked and interposed by the proper defendant or defendants having the right to claim the privilege, an adjudication of the petition or complaint, though filed after the statute had run, is as binding as if filed before the statute had run. Even amendments to pleadings are frequently allowed expressly to save a cause from the statute of limitations. *Lottman* v. *Barnett*, 62 Mo. 159. To some extent the case of *Pugmire et al.* v. *Diamond Coal & Coke Co.*, 26 Utah 115, 72 P. 385, is here analogous. There the heirs at law, the widow and children, brought an action in the district court in Utah to recover damages for the wrongful death of Andrew Pugmire, their husband and father, who was killed in Wyoming. The Wyoming statute, unlike the statute of Utah, permitted such actions to be brought only by the "personal representatives" of the deceased, and not by the heirs. Demurrers and objections on

that ground were timely interposed to the complaint, before plea to the merits and before entering upon the trial. Thereupon, the plaintiffs, notwithstanding the cause then was barred by the statute of limitations for a period of more than two years, proposed an amendment to the complaint pleading the Wyoming statute and substituting the widow as administratrix of the estate of the deceased as the party plaintiff. On objections that the statute had fully run, that the administratrix could not then herself file a complaint, and that the administratrix could not thus be substituted as a party, the amendment was disallowed. The plaintiffs standing on their amendment, the action was dismissed. On appeal the judgment was reversed, the amendment allowed, and the case reinstated. There the heirs had no authority, had no legal capacity, to bring or maintain the action. The want of authority or legal capacity was there timely and properly challenged. Here the administratrix of the estate of the deceased, without authority or legal capacity to bring and maintain the action, brought the proceeding for and in the name of the widow. The authority and legal capacity to bring and maintain it went unchallenged until about the conclusion of the trial on the merits, and then was challenged, not by the real or any party defendant, but by one representing nothing, not even acting as amicus curiae. If after the statute has run a party having capacity may be substituted for one bringing an action without legal capacity, and the substitution relate back to the commencing of the action, I see no reason why a party having capacity and real party in interest may not ratify what one, though without legal capacity, has done for and in his behalf, and the ratification likewise relate back to the commencing of the action.

I thus think this is a case where the general principles of ratification with retroactive effect apply, and where the ratification is equivalent to an original authorization (*Ruffner* v. *Hewitt,* 7 W. Va. 585; *Hartman* v. *Hornsby,* 142 Mo. 368, 44 S. W. 242; *Minder & Jorgenson Land Co.* v. *Brus-*

*tuen*, 24 S. D. 537, 124 N. W. 723; *Reid* v. *Field*, 83 Va. 26, 1 S. E. 395; *Gallup* v. *Liberty County*, 57 Tex. Civ. App. 175, 122 S. W. 291; *Simms* v. *State* [Tex. Cr. App.] 87 S. W. 689), and for reasons heretofore stated, the ratification was effective regardless of whether the statute had or had not run when the ratification was made, providing the original proceeding was instituted within time, which here was done. After such ratification, making or refusing an award on merits would be just as binding and effective on the petitioner as though the original proceeding had been instituted with her authority or by one having legal capacity to institute it for and on her behalf.

It also is claimed that an award made against an employer carrying state insurance is to be paid out of the state insurance fund. The act so provides. But the award, if made, is made against the employer, and not against the fund, and cannot be made against it, for it has no legal entity and in no sense can be a party to the proceeding; and in such case, the commission having charge and control of the fund merely directs or authorizes the award to be paid out of the fund. The commission, however, with respect to granting or refusing an award against an employer, has no enlarged or different powers or discretion when the employer carries state insurance than when carrying his own insurance or with a private company or corporation. The commission no more can sua sponte claim for the employer the privilege of the statute of limitation in the one instance than in the other; much less may it so claim it for another not a party to the proceeding. When an award is made against an employer the award, in the absence of fraud, collusion, or bad faith, is binding on the insurance carrier, whether he be a party to the proceeding or not. What a maladministration and reproach on the law it would be if the commission were permitted to refuse an award against an employer carrying state insurance, which ought to be and would be granted if he carried his own insurance or with a private company or corporation.

I thus think the order of the commission denying an award should be vacated, and the commission directed to enter one against the employer.

HANSEN, J. (dissenting). It is contended on behalf of the defendants in this proceeding that the Industrial Commission is without jurisdiction to hear an application for compensation unless an authorized application is filed within one year after the cause arises. In some jurisdictions the filing of an application within the period prescribed by statute is necessary to confer jurisdiction. This court, however, is committed to the doctrine that the statute of limitations is a matter of defense and must be pleaded to be available except in cases where public funds are involved. Under the original Workmen's Compensation Act no limit was placed upon the time within which an application for compensation must be filed. In the case of *Utah Consolidated Min. Co.* v. *Industrial Comm.*, 57 Utah 279, 194 P. 657, 16 A. L. R. 458, this court held that an application for compensation under the Workmen's Compensation Law must be filed within one year after the cause arises. Otherwise the application is subject to the defense of the statute of limitations as in the case of other liabilities created by statute. Com. Laws Utah 1917, § 6468. To the same effect is *Interurban Const. Co.* v. *Industrial Comm.*, 58 Utah 310, 199 P. 157, where it is held that the statute runs against the state insurance fund, and that if the insurance fund does not present a claim within one year the claim is barred.

In 1921 the Legislature included within the Workmen's Compensation Law a provision that any claim for compensation must be filed with the commission within one year from the date of the death of the deceased. Laws Utah, 1921, c. 67, § 3140, p. 176. Under the terms of this law it was to take effect on July 1, 1921. In the case of *Spring Canyon Coal Co.* v. *Industrial Comm.*, 58 Utah 608, 201 P. 173, decided September 22, 1921, it is expressly held

that one acting in a personal capacity has the undoubted right to waive the defense of the statute of limitations, but that the Industrial Commission, being public officials and as such trustees of the insurance fund, may not waive the defense of the statute of limitations.

I am of the opinion, however, that the statute of limitations is not involved in this proceeding. There is a vast difference between waiving the defense of the statute of limitations and waiving the right to interpose the dilatory plea that the party prosecuting the proceeding is without authority. The one goes to the very basis of the claim, and the other goes merely to a question of procedure. The reasons that are urged against permitting a trustee to waive the defense of the statute of limitations do not apply to the waiver of the right to interpose a dilatory plea. In the instant case the application for compensation was filed with the commission more than two months before the expiration of one year after the death of John Taslich. The application was signed by "Milka Skrinarich, Administratrix of the Estate of John Taslich, Deceased." There was also filed with the commission a certified copy of the letters of administration of Milka Skrinarich as administratrix of the estate of John Taslich, deceased. It would seem clear, therefore, that those whose duty it was to protect the state insurance fund had ample notice that the proceeding was being conducted by the administratrix as such for and in behalf of the widow of John Taslich, deceased. Two hearings were had upon this application before a year had elapsed since the death of John Taslich, one on February 27, 1924, and one on March 11, 1924. In each of these hearings the state insurance fund was represented by counsel, yet no question was raised as to the right of the administratrix to prosecute the application. In the second hearing, that of March 11, 1924, it affirmatively appeared that the claim was not being prosecuted by Milka Skrinarich because of any direct authority from the widow of the deceased. At this hearing considerable evidence was offered

as to whether or not the widow of the deceased was still living. The attorney for the administratrix of the estate of John Taslich, deceased, who also attorney for the application for compensation for Mrs. John Taslich, testified that he had had no communication with Mrs. John Taslich and had no positive information as to whether or not she was still alive. It further appeared at this hearing that the administratrix of the estate of John Taslich, deceased, had been an intimate friend of the family in Serbia before coming to this country. Certainly, counsel for the state insurance fund and the commission were advised at this hearing that the claim was being prosecuted by the administratrix of the estate of John Taslich, deceased, as such administratrix, and not by reason of any power of attorney from the widow of John Taslich. No claim, however, was made by the attorney for the state insurance fund, nor by the commission, that the applicant had no right to prosecute the claim as such administratrix. At the conclusion of the hearing, and at the suggestion of the commission, a stipulation was entered into between the attorney for the state insurance fund and the attorney for the applicant to the effect that a deposition of Mrs. John Taslich be taken in her country for the purpose of ascertaining when she was married, whether or not she is still living, and whether or not she was the lawful wife of John Taslich at the time of his death, etc. Again, no mention was made by either the attorney for the state insurance fund nor by the commission that they were concerned about any authority of the applicant to prosecute this proceeding as administratrix of the estate of John Taslich, deceased. After the deposition of Mrs. John Taslich was received, and at a hearing held on January 4, 1926, objection was made to receiving the deposition in evidence except that portion of the deposition wherein Mrs. John Taslich stated that she did not give any one power to represent her in this proceeding. Later, and before the decision was rendered, Mrs. Taslich ratified the application for compensation made in her behalf.

As stated in the opinion of Mr. Justice STRAUP, the plea of lack of capacity to prosecute an action is a dilatory plea, and unless timely urged at the beginning of the proceeding or as soon as the lack of capacity is made evident the defense of lack of capacity is waived. As stated in 31 Cyc. 164:

"The common-law order of pleading which was deemed natural because each subsequent plea admits that there is no foundation for the former, is as follows: (1) To the jurisdiction of the court; (2) to the disability of the person; (3) to the count or declaration; (4) to the writ; (5) to the action itself in bar thereof. Anyone of these pleas is a waiver of those preceding it in order. In accordance with this principle, it is too late to file a dilatory plea after pleading to the merits, after the trial has begun, or after the jury has been sworn."

These rules of the order of pleading have, with some modifications, been quite generally adopted in those states having a system of code pleading.

But it may be contended that a proceeding for compensation under the Workmen's Compensation Law is not subject to the same rules of procedure as are applied to actions at law and suits in equity. The same reasons, however, that demand that dilatory pleas be timely interposed or they will be waived in actions at law and suits in equity apply with equal, if not greater, force to a proceeding under the Workmen's Compensation Law. A reading of the Workmen's Compensation Law reveals the fact that the Legislature attempted to simplify all proceedings necessary to secure compensation, so that, if necessary, lay members of society may prosecute such proceedings. The law seems to contemplate that the Industrial Commission may itself advise and assist deserving persons to properly present their claims for compensation. If the decision in the instant case is permitted to stand, the attorney for the state insurance fund and the commission are placed in the position of, in effect, saying to Mrs. Taslich: The application made by the administratrix of your deceased husband's estate was sufficient during the time a proper application might have been

made and filed, but when it was too late to file a proper application it is not sufficient. Before proceeding with the application upon its merits with knowledge of the facts, the attorney for the state insurance fund should be required to make timely objection, if any he have, and thus put the applicant on notice that a proper application must be filed or, if he fail to do so, be held to have waived any such objection. True, it is not made to appear when Mrs. Taslich first knew of her husband's death. But, certainly, it cannot be said that if timely objection had been urged to the application at the time of the hearing held on February 27, or that of March 11, 1924, the widow of the deceased could not have had an aplication filed in her own right or by a person duly authorized before the statute of limitations had run. Not only this, but by reason of the failure to timely raise the objection of lack of authority on the part of the applicant, those interested in the application went on with the proceeding and apparently expended considerable effort to secure the facts and have them presented to the commission. Viewed as a matter of procedure, the persons representing the state insurance fund should be required to make the objection of lack of capacity timely, or be forever barred from raising the same. There can certainly be no purpose in holding hearings, calling and examining witnesses, sending depositions abroad, and carrying on an extensive correspondence, as was done in this case affecting the merits of the claim of Mrs. Taslich, when to do so is a nullity, and when a timely objection to the lack of authority of the person presenting the claim would have avoided such a farce. This court, and most other courts that have to do with passing upon the Workmen's Compensation law, has been very liberal in so construing methods of procedure that persons entitled to compensation shall receive the same. If Mrs. John Taslich is denied compensation in this case on account of lack of authority in the administratrix of the estate of John Taslich, deceased, to file the application under the facts and circumstances of this case, a technical rule will

be laid down to defeat her claim that is not permitted in either actions at law or suits in equity.

Every reason dictates that the rule that dilatory pleas must be timely made or be forever barred should be applied in a proceeding under the Workmen's Compensation Law the same as in other legal proceedings. I therefore concur in the result reached in the opinion of Mr. Justice STRAUP that this case should be remanded back to the commission for further proceedings.