OGDEN CITY CORPORATION v. INDUSTRIAL COMMISSION et al.

No. 5611.   Decided June 22, 1937.   (69 P. [2d] 261.)

*George S. Barker,* of Ogden, for plaintiff.

*Joseph Chez,* Atty. Gen., and *Grover A. Giles,* Deputy Atty. Gen., for defendants.

MOFFAT, Justice.

Certiorari by Ogden City, a municipal corporation, under the Workmen's Compensation Act (Rev. St. 1933, 42-1-1 et seq.) to set aside an award made by the Industrial Commission of Utah in favor of James S. McGregor. The record discloses that McGregor, an employee of Ogden City, as street supervisor, met with an accident on December 27, 1930. Ogden City was a self-insurer and subject to the Workmen's Compensation Act. While engaged in his employment as street supervisor, McGregor was struck by a speeding automobile and injured. He was confined in the hospital from the date of the accident until March 15, 1931. The city paid him his regular salary during the period of his confinement in the hospital and from the time of his release therefrom he has been in the steady employ of the city at the salary schedule fixed for street supervisor until the end of the year 1933, a period of about three years after the accident, when, by reason of a change in administration officials, he was discharged.

No formal application for compensation was made to the Industrial Commission personally by McGregor. On December 20, 1933, Dr. Savage, who was his attending physician

during the time of his hospitalization, addressed a letter to the commission in which the date of the injury and its nature are fully submitted. The letter reads:

> "Ogden City Corporation, Ogden, Utah
> "December 20, 1933

"N. H. Savage, M. D., City Physician

"Industrial Commission of Utah, State Capitol Building, Salt Lake City, Utah

"Re: James S. McGregor, 331-33d Street, Ogden

"Gentlemen: Pursuant to our telephone conversation, I am making herewith, a detailed report on the above case.

"Mr. McGregor, while working for Ogden City, December 27, 1930, as Street Supervisor, was hit by a speeding car and injured quite severely. He arrived at the Dee Hospital at 10:15 A. M. in a very serious state of shock and bleeding quite profusely from a long laceration of the head.

"The X-ray findings as to broken bones was as follows:

"'Stereoscopic views of the ribs show fractures of the 1, 2, 4, 5, 6, 7, 8, 9, 10 and 11th ribs on the right side. Stereoscopic views of the shoulder show a transverse fracture of the blade of the scapula with comminution extending into the glenoid fossa. There is another fracture involving the glenoid fossa which may also involve the base of the caracoid process. Stereoscopic views of the lumbar spine and pelvis show fractures of the transverse processes of the 2nd, 3d, and 4th lumbar vertebrae on the right side and of the 3d lumbar vertebra on the left side. There is a lateral curvature with the convexity to the left. There appears too subluxation between the 2d and 3d vertebrae with the 2d displaced posteriorally.

"'A lateral view of the left arm shows a fracture at the juncture of the upper third with the lower two thirds of the humerus. There is very little overlapping.'

"Mr. McGregor was in the hospital until March 15, 1931 and came out with a stiff elbow which persists to this date and also a weak back which bothers him a great deal especially with exertion.

"Before the injury he was a strong, healthy man who hardly knew any limit to his strength, but now he is permanently crippled.

"Ogden City paid all his hospital and nurses bills and carried him on the payroll at full salary for the entire time.

"On the first of the year he is losing his job on account of a change in administration.

"My purpose in writing this letter is to see if there is any chance for him to receive any further compensation on account of his disability.

> "Very truly yours, [sgd] N. B. Savage, M. D.

Upon this letter, treating it as an application for compensation, two hearings were had after and upon notice to the parties. At the first hearing in the Ogden city hall on March 28, 1934, the city attorney of Ogden, as disclosed by the record, was present but did not participate in the proceedings. The second hearing was held on June 14, 1934, at which time Ogden City was represented by its city attorney. McGregor was present but not represented by counsel at either hearing. Some evidence was taken at the first hearing, but the principal discussion related to an attempted settlement by presenting the matter to the Ogden city commission. At that hearing, the adoption and knowledge of the letter of Dr. Savage, above quoted, was on the part of McGregor brought out. The examination of the applicant by Drs. Weeks and Savage and their report thereon were submitted.

Under date of April 4, 1934, the city attorney reported to the Industrial Commission that although two conferences had been held, little progress had been made. Later, notice of the second hearing was served and the city attorney on behalf of Ogden City was present. McGregor testified, as did also Dr. Weeks of the medical examining committee, a report of which indicated the injuries to be as described in the application letter of Dr. Savage, and by stipulation was made part of the record. Dr. Weeks also testified that the applicant was suffering to the extent of 50 per cent loss of bodily function because of the injuries sustained. McGregor testified that seven vertebrae were broken, eleven ribs, a shoulder blade, and an arm broken in three places, and that he was unable to do any manual labor. The commission found and decided that the applicant had sustained 50 per cent permanent loss of bodily function and awarded compensation at the rate of $16 per week for 100 weeks, besides $16 per week during the period of temporary total disability, with certain credits indicated in the decision making the award.

There is ample evidence to support the decision of the commission. The application for this writ, however, raises

the question as to whether the application was timely. That matter is suggested for the first time in this court. A delayed application until the statute of limitation has run is not a ground for loss of or denial of jurisdiction of the Industrial Commission to hear and determine a cause. The plea or defense of the statute of limitations is one that may be waived.

"Ordinarily a party can rely upon the statute of limitations as a defense only where he pleads it at the first opportunity." 37 C. J. 1218, § 724 (2). However, "Although a plea of the statute of limitations has not been filed at a proper stage of the pleadings, the court, in the exercise of a sound discretion, and in the furtherance of justice may permit it to be filed at a later stage." 37 C. J. 1219, § 725 (b).

No suggestion, so far as the record discloses, was made to the Industrial Commission at any time that the matter was not timely presented to it. That matter may not be raised for the first time in this court. In the case of *Utah Delaware Min. Co.* v. *Industrial Comm.*, 76 Utah 187, 289 P. 94, 99, this court precluded the plea of the statute before the Industrial Commission when it was not timely interposed. It is there said:

"On application on behalf of the mining company a rehearing was granted to revise the findings on the evidence theretofore adduced. At such rehearing the mining company appeared and then for the first time interposed a plea of the statute of limitations. The general rule is that a party can rely on the statute of limitations only where he pleads it and ordinarily is required to interpose the plea at his first opportunity. Generally, new trials or rehearings are not granted to give a defeated party an opportunity to interpose the statute of limitations where he theretofore and before an adjudication on merits had full opportunity to interpose it. Though under some circumstances, where a plea of the statute of limitations is not interposed at the proper stage of the proceedings, permission in the exercise of a sound discretion may be given to file it at a later stage, yet not anything is here made to appear to invoke such discretion. We think the finding made by the commission disallowing the plea was justified."

Certiorari in the Supreme Court is a writ of review and may be granted by the Supreme Court when an inferior

tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction of such tribunal, board, or officer, and there is no appeal nor, in the judgment of the court, any plain, speedy, and adequate remedy in the ordinary course of law. Section 104-67-2, R. S. Utah 1933.

On review of industrial cases, it is provided that upon the issuance of the writ of certiorari out of this court the commission shall certify its record and the evidence taken in the case to this court. It is further provided that no additional evidence may be introduced in this court. The cause in this court "shall be heard on the record of the commission as certified by it," and the review shall not be extended further than to determine whether or not the commission acted without or in excess of its power. Section 42-1-78, R. S. Utah 1933.

We are mindful of what this court said in the case of *Spring Canyon Coal Company* v. *Industrial Commission,* 58 Utah 608, at pages 620 and 621, 201 P. 173, 178, where the following was stated:

"It is elementary that, in order to avail himself of the provisions of the statute of limitations, a party must in some form indicate that he relies on the defense, usually by pleading it. Where there are no pleadings required, the defense of the statute of limitations may, nevertheless, be invoked if done in proper time and by properly indicating that it is relied on. It is also elementary that, unless pleaded or relied on, the statute is waived. No doubt any person who has the right to interpose the statute of limitations may waive such right. To do that, however, ordinarily at least, implies that the right to waive is personal, and that in waiving it the person doing so acts in a personal capacity and in his own right. In this case, for example, the company, one of the plaintiffs, could waive the right to interpose the statute of limitations as a defense if it chose to do so. It could, however, only waive the right so far as it affected its own rights. Whether the State Insurance Fund could waive the benefit of the statute of limitations presents a different question. That fund is administered by the Industrial Commission as public officials, and hence is administered by them as trustees and not in their own right. The question therefore arises, May the statute of limitations be waived by those officials? It manifestly is their duty to administer the fund in accordance with law, and so as to treat all alike who have a right to

participate in that fund. The people in their sovereign capacity have an interest in the State Insurance Fund, and they are entitled to have the same distributed to those only who are legally entitled thereto. To permit the Commission, or any other person having control of that fund, to waive the statute of limitations at will must, in the long run, result in injustice and favoritism, since the statute can be enforced as against A., B., and C., and as easily waived in favor of D., E., and F. A person or corporation distributing his or its own money may elect to waive the benefit of the statute of limitations in favor of A. while he or it may insist upon it as against B. without abusing any trust or disregarding a public duty. A public official may, however, not indulge in such a practice without abusing a trust and without bestowing a favor on one which he denies to another. In our judgment, where, as here, a fund is to be administered and distributed by public officials, it should be administered and distributed strictly in accordance with law, and to those only who are legally entitled thereto without favor to anyone."

The position taken in the Spring Canyon Coal Company Case, we think, is sound. The doctrine was reaffirmed in the case of *Taslich* v. *Industrial Comm.*, 71 Utah 33, 262 P. 281, 284. In the latter case, the following is stated:

"So far as the state insurance fund is concerned, we think, as a matter of law, that the objection relied on cannot be waived. This court has decided (*Spring Canyon Coal Co.* v. *Industrial Comm.*, supra) that no waiver of the objection that an application was not made in time could be made by the officials who administer the state insurance fund because it is a public fund, and to permit such a waiver would result in injustice and favoritism, etc. The same reasons obviously preclude the waiver by public officials of any other matter which would defeat recovery against the public fund.

"To permit the claim in question to be entertained in the manner proposed would be to disregard plain and necessary essentials in the presentation of claims and to confuse and delay proceedings which are intended to be simple, direct, and summary."

In both of the foregoing cases the statute of limitations was raised—though in one of them tardily—before the Industrial Commission, and the issue, in so far as those cases are concerned, is limited to the state insurance fund.

An even stronger situation is presented as to the matter of the bar of the statute of limitations in the case of *Fuller-*

*ton* v. *Bailey,* 17 Utah 85, 53 P. 1020, which was a probate matter. In probate cases the statute raises the bar and if the record shows the statute of limitations is an available plea, executors and administrators are required to plead the bar. Apparently it becomes a matter of jurisdiction in probate cases, and unless the record affirmatively shows the presentation of the claim within the statutory time or exceptions thereto as provided by the statute, there is no cause of action stated because claims referred to in the statute "must be presented within the time limited in the notice, and any claim not presented is barred forever." Claims presented must be allowed or disallowed and will of necessity show on their face whether or not the statute has run, or if they do not on their face thus show and the executor or administrator refuses to allow them because of the bar, the record likewise shows it.

In the Spring Canyon Coal Company Case, supra, the language might imply that in all cases when public funds and public officials are involved that the statute of limitations is a bar and may be taken advantage of whether pleaded or not. In the instant case we need not concern ourselves about such an extension of the rule. It is sufficient in the instant case to say that a public official may not indulge in the practice of waiving the statute of limitations when it is available without violating a public trust, but it is likewise true that this court may not go beyond the record in a review on certiorari and new issues not found in the record may not, for the first time, be made in this court. This is an appellate court under the Constitution and in cases of appeal and certiorari its review is limited to the record. However, had the question of the statute of limitations been presented to the Industrial Commission, we are not so sure but from what appears in the record that the commission would have been justified in finding that the statute of limitations was not a bar.

We are therefore of the opinion that the award of the commission must be and it hereby is affirmed.

FOLLAND, C. J., and HANSON and LARSON, JJ., concur.

WOLFE, Justice.

I concur. I am not prepared at this time to say whether or not the holding in *Spring Canyon Coal Co.* v. *Industrial Comm.*, 58 Utah 608, 201 P. 173, regarding the inability of the Industrial Commission to waive the statute of limitations, is sound or unsound. Until overruled, it is the law. But if the statute cannot be waived by the City of Ogden, that only goes to the extent of saying that it could be any time pleaded during the proceeding. It does not change the rule that if not pleaded we will, on appeal, treat it as if it had been pleaded, that is, treat it as if it was part of the record when it is not. If the award below could have been avoided by pleading the statute, the responsibility of the city or those who represented it for failing to plead it may remain. We are not called upon to appraise the consequences of the city's failure to plead it. We are not prepared to say what would be the recourse of a beneficiary where his trustee was required to plead the statute and failed to do so. Certainly, the beneficiary if in time could come into court and compel the plea. Whether the court of its own motion would compel the plea if it discovered that it should be pleaded or what the consequences would be if it were not pleaded, we do not now say. Suffice it to say that the principle that one cannot waive the statute of limitations, if and when such principle comes into play, does not change the rule of pleading that the statute must be pleaded, nor affect a judgment obtained because it was not pleaded.