(No. 16190.—Reversed and remanded.)

THE YELLOW CAB COMPANY, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(CHARLES G. CULLEN, Plaintiff in Error.)·

*Opinion filed December 16, 1924—Rehearing denied Feb. 6, 1925.*

1. WORKMEN'S COMPENSATION—*employer must show prejudice because of inaccuracy of notice of accident.* Under section 24 of the Compensation act inaccuracy of the notice of the accident is not a bar to proceedings for compensation unless the employer (the statute reading "employee" by clerical error) "proves that he is unduly prejudiced in such proceedings by such defect or inaccuracy," and where the employer makes no showing of prejudice by the failure of the notice to give the precise date, place and cause of the accident and the name and address of the employee, the notice cannot be held insufficient on that ground.

2. SAME—*furnishing medical services is payment of compensation within meaning of section 24 as to time of making claim.* Under the provision of section 24 of the Compensation act that claim for compensation may be made within six months after payments have ceased, the furnishing of medical, surgical and hospital services must be regarded as the payment of compensation, and the employee in such case is not required to make claim for compensation except within six months after the filing of a receipt for or a statement of the amount of compensation so paid.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. HARRY M. FISHER, Judge, presiding.

THOMAS C. ANGERSTEIN, for plaintiff in error.

HENRY L. KANE, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The circuit court of Cook county set aside an award of the Industrial Commission allowing compensation to Charles G. Cullen from his employer, the Yellow Cab Company, and upon his petition a writ of error was allowed to review the judgment.

Cullen was employed as a chauffeur by the Yellow Cab Company. Both parties were under the Workmen's Compensation act, and Cullen was injured by an accident occurring in the course of and arising out of his employment, which resulted in permanent partial incapacity. There is no dispute as to any of these questions or the amount of the award, but the defendant in error's claim that no award should have been made by the commission is based on the alleged failure to give notice of the accident or make claim for compensation within the time prescribed by section 24 of the Workmen's Compensation act. This section requires, as a condition precedent to the maintenance of any action for compensation, notice to the employer within thirty days of the accident and a claim for compensation within six months, or if payments have been made under the act, written claim for compensation within six months after such payments have ceased. The claim for compensation was filed with the commission on December 30, 1922, and it is claimed that the accident occurred on January 9, 1921.

Cullen testified that he was hired by a woman about eight o'clock in the evening to take her to 4719 Kenmore avenue, in the city of Chicago, where she told him she wanted to go to the New York Central depot and sent him up-stairs for a trunk. As he came down with it he slipped off the top step at the second floor and fell down, with the trunk ahead of him, sliding on his back on the stairs from the second floor to the first. He felt pain, tried to lift the trunk but could not and could not take his passenger to the station, so she paid him off. After riding for about an hour he went back to the taxicab stand and was there for about an hour, when his back started paining him and he checked in at the garage. He told the night foreman his back was paining him and he wanted to check in. The next day he told the garage manager that he was carrying the trunk of a woman who had hired him and had a

fall. Alfred Levine, floor manager of the garage, asked him what was the matter with his back, and Cullen told him that he was carrying this woman's trunk and had fallen. After that he could not work regularly but would work a day or two and then lie off two or three days. Levine denied that Cullen told him of the accident in January, February, March or April, 1921.

When Cullen first testified before the arbitrator he gave the date of the accident as January 15. It afterward appeared that he had not worked on that day. He subsequently testified that since his former testimony he had found a memorandum which he had made at some time pertaining to his hurt and subsequent treatment. The first item of the memorandum was, "Hurt Jan. 10, 1921," and the plaintiff in error, testifying from the memorandum, placed the date of the accident on the 9th, 10th or 11th of January. The records of the defendant in error showed that the plaintiff in error worked on January 3, 4, 5, 6, 7, 8 and 9 but did not work on January 10, 11 or 12, and Cullen testified on the hearing before the commission that since his last testimony he had found some of his pay envelopes, from which it appeared that the accident had happened on January 9. The defendant in error contends that other testimony of the plaintiff in error and Dr. Stern fixed the time as being in April, 1921. Dr. Stern testified that he first saw Cullen professionally in May, 1921, that he made records of his cases but destroyed them after a year, and that he had destroyed the records of his treatment of Cullen. He further testified that Cullen called at his office, and about ten days later he called at Cullen's home, and the same day he was looking for a new apartment; that he had a May lease for eighteen months that did not expire until October, but he was looking for a lease, and by the association of these two things in his mind fixed the time of his treatment of Cullen, who testified that he did not feel very well the next day after the

accident and did not work though he went to the garage about two o'clock in the afternoon; that he did not work the next day and was not positive about the day after that, but he went to see the company's doctor at Dr. Stern's office about three or four days after the accident. That was Dr. Israelson, and the next day he saw Dr. Stern, who was not in the first day. Dr. Stern gave him a prescription and he got some liniment. About a week later he again saw Dr. Stern, who put adhesive plaster all over his back and told him to come back in about a week. The floorman, Al Levine, sent him to Dr. Scott about two weeks after his last treatment from Dr. Stern. From this difference between the doctor's testimony and Cullen's the defendant in error argues that it is uncertain whether the accident occurred in April or in January. The plaintiff in error did not work with any regularity after January 9, and the evidence justified the conclusion that the accident was on January 9 and the doctor was mistaken, and the finding of the commission that the respondent had notice of the accident within thirty days.

The defendant in error contends that the statute requires the notice to show the approximate date and place of the accident, and the notice given not complying with the requirement, was insufficient. Section 24 provides that "no defect or inaccuracy of such notice shall be a bar to the maintenance of proceedings of arbitration or otherwise by the employee unless the employee proves that he is unduly prejudiced in such proceedings by such defect or inaccuracy." The second word "employee" in this sentence is a manifest clerical misprision and means "employer." Here the employer has made no showing that it was unduly prejudiced by the failure of the notice to give the precise date, place and cause of the accident and the name and address of the employee or by any other defect or inaccuracy in the notice which it received.

Since the petition of the plaintiff in error for adjustment of compensation was not filed with the Industrial Commission until December 30, 1922, nearly two years after the accident, the defendant contends that the proceeding is barred by the provision of section 24 prohibiting its maintenance unless claim for compensation has been made within six months after the accident, or if payments have been made under the provisions of the act, "within six months after such payments have ceased and a receipt therefor or a statement of the amount of compensation paid shall have been filed with the commission." The plaintiff in error's answer to this claim is that payments were made under the provisions of the act, and that no receipt therefor or statement of the amount of compensation paid has been filed with the commission, and that therefore the six months' limitation prescribed by the statute has not run. Cullen testified that he was sent by Levine, three or four days after the accident, to Dr. Stern, who treated him four or five weeks. Dr. Stern testified that he treated Cullen twice,—once at the doctor's office, and about ten days later at Cullen's home. Dr. Stern attended welfare cases of the defendant in error, and when he learned of the accident as the cause of Cullen's condition he decided the case was not one for the welfare department. Cullen testified that about two weeks after the treatment by Dr. Stern ceased he was sent by Levine to Dr. Scott, who treated him for four weeks at home. After that he was taken to the Hahnemann Hospital and was treated there for five weeks and three days by Dr. Scott, who testified that his treatment began May 17. He was sent to the hospital by Miss Woodward, who was one of the company nurses. Dr. Scott testified that he took care of the accident work of the defendant in error and the other doctors of the welfare work, and that he was the doctor for the Yellow Cab Company and took care of their compensation cases in 1921 and 1922. From the Hahnemann Hospital Cullen was taken home;

then to the Michael Reese Hospital, where he remained for twenty-five weeks and one day; then to the Wesley Hospital for examination and after the examination to his home, where he was under Dr. Bernstein's care about two and a half months. Mrs. Frances G. Phelps testified that she was supervising nurse for the welfare department of the defendant in error, and that the bills for the services of the doctors and for the hospital attention and service which the plaintiff in error received were paid by the welfare department of the defendant in error. That department also paid $160 to the plaintiff in error in weekly installments of $10 each. The welfare department is maintained, at least in part, by regular weekly payments by the employees. The plaintiff in error did not know that the doctors' and hospital bills were being paid by the welfare department. At one of the hospitals he was in a ward with other accident cases. He had been sent to the doctors and went to the hospitals at the doctors' orders, under direct instructions from his superiors in the employ of the defendant in error. He had received an injury for which he was entitled to compensation from his employer. There was no denial by the employer of liability, and the furnishing of medical, surgical and hospital services must be regarded as the payment of compensation under the Workmen's Compensation act. (*Central Car Works* v. *Industrial Com.* 290 Ill. 436; *Jackson* v. *Industrial Com.* 302 id. 281; *Field & Co.* v. *Industrial Com.* 305 id. 134.) The plaintiff in error was therefore not required to make claim for compensation except within six months after the filing of a receipt for or a statement of the amount of compensation so paid.

The judgment will be reversed and the cause remanded to the circuit court, with directions to quash the writ of certiorari.

*Reversed and remanded, with directions.*