## No. 13,573.

### FRANK *v.* INDUSTRIAL COMMISSION ET AL.

(43 P. [2d] 158)

Decided March 18, 1935.

Mr. C. G. Garbarino, Mr. O. A. Johnson, for plaintiff in error.

Mr. Paul P. Prosser, Attorney General, Mr. M. S. Ginsberg, Assistant, Mr. Frank C. West, for defendants in error.

Messrs. Dines, Dines & Holme, Messrs. Lee, Shaw & McCreery, Messrs. Yeaman, Gove & Huffman, Mr. William E. Hutton, Messrs. McComb & Green, Mr. Fred W. Varney, Mr. Gordon W. King, amici curiae.

*En Banc.*

Mr. Justice Bouck delivered the opinion of the court.

The case at bar was first considered in a department of three justices. An opinion was handed down reversing the judgment of the lower court. While a petition

for rehearing was pending, a number of attorneys asked and obtained leave to file, and did file, briefs as amici curiae. They requested that the petition for rehearing be considered and decided by the court en banc. This has been done. A rehearing having been granted, the previous opinion was withdrawn; and, the case having since been orally argued by counsel and duly considered by the court en banc, the present opinion—also reading for reversal—is hereby substituted, with such amplification as seems called for by the arguments advanced in the briefs.

The plaintiff in error, August Frank, claims under the Workmen's Compensation Act as an injured employee of the Black Diamond Fuel Company. The Industrial Commission refused to award compensation. The claimant duly instituted his action in the district court to compel a contrary decision. That court, however, affirmed the commission's order, and this is the judgment we are asked to reverse.

The claim here asserted is for compensation on account of a ruptured appendix, with subsequently resulting peritonitis. The injury occurred while the claimant was lifting a mine car in the company's coal mine. He consulted the company's physician, who examined him, had him removed to a hospital, and saw that an appropriate operation was performed.

Though the accident happened on October 11, 1932, it was August 4, 1933, when the claimant filed a formal notice of his claim with the commission. Nearly four months had then elapsed since the expiration of the six-month period fixed by section 84 of the act, hereinafter quoted. (The commission's record before us seems to indicate that a prior notice had been filed the last part of June or first part of July, about one month earlier, but for our present purpose this point is immaterial.)

On August 9, 1933, the commission received from the company's insurer a "notice of contest," dated the 8th, denying liability on the following alleged grounds: (1) That the injury does not come within the provision of

section 15 of the Workmen's Compensation Act; (2) that, if any compensation be due, it should be reduced 50 per cent under section 83 of the act; (3) that the average weekly wages were not to exceed $10; (4) that notice was not given in time as provided by section 31 of the act, nor filed in time as provided by section 84 thereof; and (5) that disability terminated within the ten-day waiting period.

Of the above five grounds, (1) and (4) are the only ones which, under the evidence in the record, call for consideration; and under (4) only section 84 need be discussed, since the evidence shows that a verbal notice was given to the superintendent of the company immediately after the accident.

On August 11, 1933, the commission received a letter from the insurer, enclosing a letter—received by it from the company and dated two days earlier—which stated that the claimant was not injured while in the company's employ, that he "had an attack of appendicitis and was taken by Dr. Snair [one of the company physicians] to the Community Hospital and from there to the County Hospital where he was operated upon," and that he "remained at the County Hospital for some time." By way of unimportant correction, it may be said that the claimant was not operated upon at the County Hospital, but, according to the uncontradicted evidence, at the Community Hospital, whither he was taken by the company physician as already stated.

On December 28, 1933, the commission received from the company a letter dated the day before, stating that the claimant "was not hurt in the * * * mine," but "became ill at home and not due to any cause of his labor. * * * Some time after Mr. Frank was taken to the hospital, news came to us that he had been operated on for some intestinal trouble and also his appendix was removed, therefore we did not feel or believe it was a case of injury."

The denying attitude thus expressed by the company

and its insurer was uniformly preserved. From the very beginning of the controversy, the company contended that the injury was not sustained in the course of the claimant's employment and did not arise out of it; but it introduced no evidence to support this contention. The claimant emphatically stated the contrary, and his uncontradicted evidence in substantiation of the statement is before us.

The referee of the commission duly held a hearing, pursuant to notice, on December 20, 1933. Both sides appeared by counsel. The claimant was the only witness called by either side. He told a consistent story to the effect that his injury arose out of, and in the course of, his employment while he was at work inside the company's mine when he received a strain followed by the rupture of his appendix. He also testified that he gave notice of the injury to the employer company forthwith. The medical, surgical and hospital treatment necessitated by his condition are amply attested. A part of this treatment is shown to have been given by the company physician; the remainder is shown to have been given under authority from him. The company brought in no witnesses; neither the superintendent to whom the claimant gave prompt verbal notice of the injury; nor any of the employees mentioned by the claimant as present when the injury occurred; nor either of the two company doctors who had examined and passed the claimant when he went to work for the company only two weeks before, and who were both present when the operation was performed after the injury.

Under the evidence before it, and in the total absence of testimonial refutation or impeachment, the commission could properly make no other finding than that the injury was compensable.

In spite of the fact that the claimant's testimony stood thus uncontradicted and unimpeached, the commission's referee on January 12, 1934, rejected the claim. His order contains the following findings: "Claimant was

employed as a miner, by the above named respondent employer. On October 11th, 1932, while pushing a loaded coal car, claimant alleges to have sustained injuries which forced him to leave his employment on October 13th, 1932. Claimant's disability resulted from the rupture of his appendix and possible other internal injuries. * * * On or about October 12th, the claimant called the company doctor and received attention, operative treatment and hospitalization. The respondent employer has steadfastly maintained that claimant's condition was not the result of accidental injury. Claimant did not file his claim for compensation until August 4th, 1933, or nearly ten months after the commencement of his disability. The Referee finds from the evidence that claimant's claim for compensation is barred by Section 84 of the Workmen's Compensation Act * * *.'' That section, of course, relates, by its express terms, only to claims for compensable injuries.

The company, for the manifest purpose of avoiding any liability resulting on account of the compensable injury established as aforesaid, invoked the bar of the following statute: ''* * * The right to compensation and benefits, as provided by this Act, shall be barred unless within six months after the injury, or within one year after death resulting therefrom, a notice claiming compensation shall be filed with the Commission * * *.'' C. L. 1921, §4458 (as amended by S. L. 1923, page 745, §15), being the above mentioned section 84 of the Workmen's Compensation Act.

There is no doubt that the six-month period prescribed for filing notice with the commission had elapsed without such filing.

To obviate this purported defense, and avoid the apparent bar, the claimant relies upon the sentence immediately following the passage just above quoted, namely: ''This limitation shall not apply to any claimant to whom compensation has been paid.'' Ibid. He contends that the furnishing of the services rendered by, or under the

direction of, the company's physician constituted—in view of the power and authority granted the physician by the company's contract described below—the payment of compensation within the meaning of the language used. The real question in the case is whether it did.

The question is answered in the negative by the attorney for the company. He earnestly argues that the company neither authorized nor knew of the services rendered by or by direction of its doctor, and that the company did not pay for them.

Of course, in order to bind the company, its authority for rendering the services must appear. If they were rendered by its authority, it is immaterial whether it knew about the specific services or not.

■ Prior to the alleged accident the employer company adopted a medical plan, approved by the commission, whereby it entered into a contract with a certain physician, who therein agreed to "furnish such medical, surgical and hospital treatment, medical, surgical and hospital supplies including crutches and apparatus as may reasonably be needed at the time of the injury of any of the * * * employees (provided such injury occurred while such employee is in the performance of his duties under his employment * * *) and thereafter during his disability but not exceeding four months from time of accident nor $500 in value to cure and relieve from the effects of the injury * * *." In the contract the company promised to pay to the physician, within fifteen days after each statement for services of the preceding month, "the usual fees and charges which [he] charges others, however, not to exceed the maximum fee schedule adopted by the Industrial Commission." The physician was also, by the contract, duly authorized to employ all needed assistance. Under the contract, no duty rested upon the employees to give the company any notice of the treatment.

By the same contract—but in a manifestly separable part thereof—the company agreed to collect by deducting

from the wages of each employee, and to pay over to the physician, one dollar and a half or one dollar per month, depending upon whether the employee was a married man or not. In consideration of this deduction from wages the physician agreed "to furnish medical care, medicines (antitoxins and special medicines excepted) as are needed in cases of sickness (with the exception of venereal and obstetrical cases) to all employees * * * said employees to receive such treatment at the mine office, the office of [the physician] or at their home * * *." The proper amount hereunder was deducted from the claimant's wages.

It is not necessary for the purposes of this opinion, and in this particular case it would not be proper, to determine the exact scope of the last quoted passage, which applies when there is no compensable injury, but is not involved herein. It is not now for us to decide whether in the event of a noncompensable injury the claimant would be entitled, free of charge in whole or in part, to all or any of the services and supplies actually furnished in the present instance. According to the evidence before us the ruptured appendix and its direct and natural consequences were due to the strain brought on by, and in the course of, the claimant's employment; in other words, the fact of a compensable injury had been proved, and presumptively he had a right to compensation under the Workmen's Compensation Act. The assessment part of the contract, governing noncompensable injury or illness, consequently does not apply. The sole issue, as above stated, is whether under the facts of this case the furnishing of medical and hospital services removed the bar created by section 84 of the act.

We do not hold—nor is it necessary to hold herein —that whenever a compensable injury is sustained, and medical treatment is furnished by the employer, this in and of itself takes a case out of the statute. Under the Workmen's Compensation Act, the employer company is absolutely liable for the expense of medical services

necessitated by a compensable injury. There is no doubt that, under the facts appearing in the record, the services rendered for the compensable injury here established by the evidence operated to avoid the bar of the statute. The company's contract recognized its liability to render, or to pay the expense of, such services, and conferred upon its physician general authority for furnishing those services and supplies in all such cases. Hence, inasmuch as all the evidence shows that the claimant did sustain a compensable injury of which the company forthwith received actual notice and knowledge, the treatment given him fell within the class which, under both the statute and the contract, imposed upon the company unqualified financial responsibility. Whether the company would have been charged with such responsibility if it had not had actual notice or knowledge, need not be now determined or considered. Here such notice or knowledge was proved. And by the express terms of the contract, the treatment was to be given just as was done. This, so far as the claimant is concerned, was (at least under the facts shown herein) the exact equivalent of payment; and he was thereby exempted from the requirement of serving the commission with written notice, because ''compensation has been paid'' within the reasonable signification of those closing words of section 84, as heretofore held by this court. *Industrial Commission v. Lockard,* 89 Colo. 428, 3 P. (2d) 416; *Royal Indemnity Co. v. Industrial Commission,* 88 Colo. 113, 293 Pac. 342; *Industrial Commision v. Globe Indemnity Co.,* 74 Colo. 52, 218 Pac. 910. Some of the amici curiae, conceding the force and effect of this line of our decisions, ask us to overrule those cases. We know of no good or sufficient reason why we should do so.

The order of the referee, adopted verbatim by the commission, also contains a finding which undertakes to say that the medical plan contract is the thing entitling an employee, by reason of his payment of the regular medical assessment, to medical attention in case of com-

pensable injuries. This was error. Section 51 of the act expressly prohibits the adoption of any medical plan "which relieves the employer from the burden of assuming and paying for any part of the medical, surgical and hospital services and supplies hereinabove required." C. L. 1921, §4425. A correct reading of the company's medical plan contract shows that this statutory provision was respected, as appears also from the company's answers on the medical questionnaire submitted by the commission. If an injury is compensable, the duty of the employer to provide medical and kindred relief at his own expense is absolute. It cannot be made to depend upon any requirement of payment of medical assessments by the employee. Such a requirement, in case of compensable injuries, would be unlawful.

The services and supplies furnished here were clearly furnished, in a case of verbally reported compensable injury, under the express authority, and under the express requirement, conferred upon the company physician by the contract into which the company had voluntarily entered. The company's employees, including the claimant, occupy the position of beneficiaries under that contract.

It follows that the commission erred when it said in its findings: "* * * said statute of limitations is not waived by the respondent employer or insurance carrier having furnished medical attention, for the reason that the medical treatment furnished to this claimant was by reason of the medical plan above referred to, for a disability not accidentally sustained or connected with his employment."

Some of the amici curiae earnestly contend that in any event the company ought not to be deprived of a hearing on the merits merely because it did not offer evidence thereon, but virtually limited its defense to setting up the bar of section 84.

■■ Procedure under the Workmen's Compensation Act is intended to be speedy and effective. Its sum-

mary nature is emphasized throughout the act. Parties are expected to introduce all their evidence at the appointed hearing. On that evidence, so introduced, the Industrial Commission is required to decide. In determining whether the commission has done so in a particular case, a district court and this court must apply the recognized rules and principles of law. Where, as here, all the evidence supports the claim, because no evidence has been introduced to the contrary and no impeachment has taken place, the conclusion necessarily drawn by the law from the evidence must be enforced. Therefore the commission ought here to have found that the injury of the claimant, prompt notice whereof was proved to have been given to the company's superintendent was compensable, for no other finding would be possible upon this evidence. It ought further to have found that the medical and other services which were required to be—and, according to all the evidence, actually were—given to the claimant, as required by the statute and in compliance with the express terms of the contract between the employer company and the company doctor, constituted compensation within the meaning of the statutory provision whereby the bar of the limitation statute "shall not apply to any claimant to whom compensation has been paid." These are the only findings possible under the evidence. The district court, in view of the record herein, ought to have sent the case back to the commission with directions to make these inescapable findings, but also with directions first to hold a further hearing solely on the issue of how much compensation should be awarded, and to make, on the evidence there taken, a proper award of compensation to the claimant.

The order of the commission and the judgment of the district court are reversed, and the case remanded to the district court, which will enter judgment giving the aforesaid directions and returning the commission's record to that body for proceedings in conformity with this opinion.

Judgment reversed with directions.

Mr. Justice Campbell, Mr. Justice Burke and Mr. Justice Holland dissent.