No. 35,315

HARRY PITTMAN, *Appellee,* v. GLENCLIFF DAIRY PRODUCTS COMPANY and EMPLOYERS LIABILITY ASSURANCE CORPORATION, *Appellants.*

(119 P. 2d 470)

Opinion filed December 6, 1941.

Robert C. Foulston, George Siefkin, S. E. Bartlett, Lester L. Morris, George B. Powers, Carl T. Smith, C. H. Morris and John F. Eberhardt, all of Wichita, for the appellants.

Dallas W. Knapp, of Coffeyville, for the appellee.

The opinion of the court was delivered by

HOCH, J.: This case arises under the workmen's compensation act. Respondents, the employer and its insurance carrier, appeal from a compensation award made to an injured employee. The issue presented is whether written notice of claim was served in time. The answer will be found to turn on the question of whether "compensation" was paid by the employer within certain periods following the injury.

Harry Pittman, the appellee, was employed as a cream tester by the Glencliff Dairy Products Company at Independence, Kan., at a salary of $80 a month. On or about November 15, 1936, while engaged in his regular employment, sulphuric acid was accidentally spilled upon his hands, causing painful injury. Under circumstances unnecessary to relate in detail, the injury grew worse in the course of several succeeding years. The first written demand for compensation was made on August 13, 1940, about three years and nine months after the injury.

The claim was heard by the district court of Montgomery county in April, 1941, on appeal from an award made in favor of the claimant by the workmen's compensation commissioner. On May 17, 1941, the trial court affirmed the award and entered judgment against the employer and its insurance carrier in the sum of $11.07 per week for 226 weeks from July 22, 1940, and also in the sum of $226.93 for medical, surgical and hospital treatment, and for costs.

It is admitted that both the claimant and the company were subject to the workmen's compensation law and there is no contention that he did not suffer a compensable injury. The sole contention is that the claim was barred under the provisions of G. S. 1935, 44-520a (the accident having occurred prior to G. S. 1939 Supp. 44-520a) the pertinent part of which reads as follows:

"No proceedings for compensation shall be maintainable hereunder unless a written claim for compensation shall be served upon the employer . . . within ninety (90) days after the accident, or in cases where compensation payments have been suspended within ninety (90) days after the date of the last payment of compensation . . ." (Italics supplied.)

It is well established that unless written claim for compensation

is served upon the employer within the ninety days specified, a claim for compensation cannot be entertained. (*Long v. Watts,* 129 Kan. 489, 283 Pac. 654; *Graham v. Pomeroy,* 143 Kan. 974, 57 P. 2d 19; *Smith v. Sonken-Galamba,* 149 Kan. 693, 88 P. 2d 1114.) It has also been held that if the claim is once barred under the statute it cannot be revived, even by subsequent voluntary payments by the employer. The ninety-day provision (now 120 days) is imperative and it cannot be waived. (*Graham v. Pomeroy,* 143 Kan. 974, 975, 57 P. 2d 19.) Further, it has been held that payment for medical attention is tantamount to payment of compensation. (*Richardson v. National Refining Co.,* 136 Kan. 724, 18 P. 2d 131; *Ketchell v. Wilson & Co.,* 138 Kan. 97, 23 P. 2d 488.) The question then is whether there was any period in excess of ninety days in which no compensation was paid, between November 15, 1936, when the accident occurred, and August 13, 1940, when the written notice of claim for compensation was first served. More accurately, whether there was any substantial evidence to support the finding, in effect, of the trial court that "compensation" was paid without the intervention of any such ninety-day period.

The record is rather an extended one, and no useful purpose would be served by full recital. Many of the facts brought to our attention require little or no comment, as they do not bear upon the determining issue. We may sketch the story briefly. Claimant testified that following the injury he was given treatment by Doctor Ellison for two or three months and following that by Doctor Clark "for a month or two anyway"; that he didn't consult another doctor until his hands grew worse and that then he consulted Doctor Bullock—which was about a year later, in the fall of 1938. He was in the hospital for several weeks at that time and was also treated by Doctor Swanson. About a year later—in the fall of 1939—he was again treated by Doctor Swanson. In May, 1940, he accompanied Mr. Higginson, manager of the company, on a trip to Halstead, Kan., where, he testified, he consulted Doctor Hertzler, who told him that nothing could be done for his hands, but gave him some salve to use on them, and another doctor who told him that the only thing that could be done would be amputation of his hands. Claimant testified that after the accident he only worked as a tester for a month or two and then went to work on a delivery truck route at the same salary, $80 a month, plus a commission; that from the time he was injured until he stopped work on June 2,

1940, he was off work only once and that was when he was in the hospital, which was in the fall of 1938. Piecing together the testimony offered in claimant's behalf, it appears that there was a period of approximately seventeen months—from March, 1937, to the latter part of September, 1938—between the time when Doctor Clark treated him and the time when he was treated by Doctors Bullock and Swanson, in which interim no doctor was treating him; also a similar period of about eleven months from early in November, 1938, following the treatments by Doctors Bullock and Swanson, to sometime in October, 1939, when Doctor Swanson again treated him; that he did not consult a doctor thereafter for a period of five or six months and until a visit at Halstead in May of 1940. During all these periods he continued in the employ of the respondent.

It is not contended that at any time the respondent company paid the claimant any compensation as such. Appellee only contends that certain money received by him was in fact payment of compensation, sufficient to toll the statute, G. S. 1935, 44-520a.

We now examine the evidence as related to the period of approximately seventeen months from the latter part of March, 1937, to the latter part of September, 1938. If there was any period in excess of ninety days within that seventeen months when no compensation was paid, then appellee's cause must fail, under the law as hereinbefore stated. The same might be said as to any of the similar succeeding periods above outlined.

The trial court made extended findings of fact. It will suffice to summarize such findings as are relied upon by the appellee to show payment of compensation. The trial court found:

1. The respondent "advanced, paid to claimant and paid to others for claimant, doctors, hospital, medicinal and other bills . . . the sum of $233.07 with the agreement with claimant that if claimant received his insurance, then said sum should be returned to respondent." (Finding III.)

2. The respondent increased the claimant's wages, in 1938, from $80 to $85 a month "partly on sympathy because of his affliction so he could use the same on his medicinal and doctor bills." (Finding IV.)

3. "Claimant was off and unable to work for several weeks in the fall of 1938, on account of the injury to his hands. Respondent appreciating the terrible condition of claimant's hands paid him

regular wages therefor, the same as though he had been on duty." (Finding IV.)

4. Respondent permitted claimant to have a helper, first at claimant's expense, and later at respondent's expense, to assist with the truck job. (Finding V.)

5. Respondent made oral promises to take up his claim with the insurance company. (Finding VII.)

6. Respondent made three $25 payments following claimant's discharge on June 2, 1940. (Finding XII.)

7. Respondent retained claimant at lighter work for the same wages, and when he was not able to perform satisfactorily the work for which he was paid; that a portion of the wages so paid constituted in fact "compensation." (Findings IV, V, X.)

We shall take up the findings, as summarized, *seriatim*, in their relation to the seventeen months' period now being considered.

1. Assuming for present purposes only that "advances" made to claimant and to be subsequently reimbursed constituted the furnishing of medical aid, and were therefore tantamount to payment of compensation, we are only here concerned with such medical aid prior to the seventeen months' period. When was that service furnished? The trial court located such treatment "early in 1937" and found that the claimant "placed himself in the care of Dr. Porter Clark . . . who treated his hands for sometime"; that claimant "followed Doctor Clark's prescription for quite a while." Claimant testified that he consulted Doctor Clark (which was in March, 1937) and "used his prescription for quite a while . . . I judge it would be a month or two anyway." Doctor Clark's statement showed treatments from March 2 to March 25, 1937. In any event, there is no testimony to show that Doctor Clark's treatment extended more than "a month or two" and at best that would not be later than April or May of 1937. There is no evidence of any medical treatment furnished from then until in September, 1938. This leaves a period of fifteen months at least when no medical aid can be claimed to have been furnished by respondent.

2. All the testimony shows that the increase in wages was not earlier than September, 1938. It cannot, therefore, avail the claimant as to the instant issue.

3. Plaintiff testified that the only time he was off work was when he was "in the hospital and doctoring with Doctor Bullock." That was in September and October of 1938 and therefore does not touch the long period here at issue.

4. Permitting the claimant to have a helper, who was paid by the claimant himself, cannot constitute payment of compensation by the respondent. The trial court did not find when the respondent furnished a helper. Claimant said it was after two milk routes were combined. The only testimony was that the two milk routes were not combined until after the claimant had returned from the hospital. That locates it sometime after the seventeen months' period here considered, and therefore furnishes no support to appellee's contention in the immediate inquiry.

5. The provision of the act which requires written notice of claim for compensation within ninety days after the accident, or after payment of compensation ceases, cannot be waived. (*Long v. Watts,* supra; *Klein v. McCullough,* 135 Kan. 593, 11 P. 2d 983; *Graham v. Pomeroy,* supra.) Therefore, the alleged oral promises of respondent "to make an effort to see what could be done about the insurance" could not waive the requirement as to notice or toll the statute.

6. Payments made by respondent after June 2, 1940, even if regarded as payment of compensation, have no bearing on the instant inquiry as to the seventeen months' period.

7. We now reach the crux of appellee's contention. The trial court's finding of fact number X was as follows:

"Respondent paid claimant the sum of $11.07, as compensation, weekly, from November 22, 1936, to June 2, 1940, for 182 weeks in the total sum of $2,014.74. That said weekly payments although not 'earmarked' compensation were, in fact, compensation. That the balance in excess of said sum of $2,014.74 paid by respondent to claimant was for services and a gratuity on account of sympathy for his situation and condition."

This finding was based on other findings to the effect that the work to which appellee was assigned after the accident was lighter work, and that respondent continued to pay him the same wages, even though he could not do the lighter work well.

First, what evidence, direct or circumstantial, was there to support these findings? Following the accident, appellee was transferred from his job as milk tester and given a job delivering milk on a milk route. He testified that the new work on the milk route was lighter than that of a cream tester in that "the heaviest lifting would be around 40 pounds" whereas as a tester he had "handled from 5 to 100 pounds of cream." Also, on the truck route he did not have to put his hands in milky water or have milk on them, since all the milk handled on the route was in bottles or sealed up. The only evidence that the new work was "lighter" was appellee's own state-

ment to that effect. There was no testimony that the services he furnished were not worth $80 a month. Respondent's testimony was that appellee's work was satisfactory during the period in question. However, we are not here weighing conflicting testimony but only seeking for testimony which might be said to support the findings. The only testimony offered by appellee which might tend to show that respondent retained appellee in spite of unsatisfactory work was that the manager remarked to him at times that he thought the route "should show an increase more than what it was and he didn't think I was able to handle the job like it should be" and that "they put a helper on to at least build it up." Even as to such testimony there was no evidence connecting the condition of appellee's hands with any failure to build up the route business in a satisfactory way. Moreover, the helper referred to, for whatever purpose he may have been put on, was not put on until sometime after October, 1938. As to any helpers which appellee may have had during the period now being considered, there was no testimony that respondent paid such helpers, authorized them or knew that appellee was using them.

As to the trial court's finding (No. X) that out of appellee's weekly salary of $18.46 the sum of $11.07 constituted "compensation," although not so "earmarked," we find no factual basis in the evidence for such computation. There was no evidence that the service performed was not worth $18.46 a week nor that $11.07 represented any difference between what the employee earned and what he was paid. The sum of $11.07, as a finding of fact, is wholly unsupported.

The issue finally arrived at is a narrow one. In order to affirm the instant judgment we would have to say that in any workmen's compensation case a part of the wages paid an employee, following an injury, may be designated "compensation" upon a record limited substantially as follows: the employee, having suffered some injury, was retained by his employer at a normal or regular wage, in the same or other work; testimony by the employee alone that he was given "lighter" work and was not in fact able to do satisfactorily the work for which he was paid; no evidence that the services which he rendered were not worth the amount which he received. To hold such evidence sufficient to impute to employers the voluntary payment of "compensation" would enunciate a rule not only uncalled for by the act but, in our opinion, one which would inevitably work to the injury of employees. Certainly few employers would

take a chance upon retaining an employee or showing him any consideration on account of an injury, knowing they may be faced at sometime in the future with the contention that even though they did not know it, and had no reason to know it, they have in fact been paying "compensation" in addition to wages, and may be liable not only for future payments of compensation, but for past deficiencies in large and uncertain amounts. Such a rule, in its practical results to employees, would be contrary to the liberal interpretation enjoined by the act and to which we have steadfastly adhered. In order to extend, by payment of compensation, the time within which written notice of claim must be served—as provided in the statute—the facts must be such that it can reasonably be said, based upon substantial evidence, that the employer was aware, or should have been aware, that he was making such compensation payments.

This rule finds support in decisions from other jurisdictions, under a statutory provision identical with ours as far as the instant issue is concerned. Two cases closely in point are *Elkins v. Cambria Library Association*, 82 Pa. Supp. 144, and *Hunt v. Industrial Acc. Comm.*, 43 Cal. App., 373, 185 Pac. 215. Such cases as the New York case of *Schwartz v. Jacobs Bros. Co.*, 247 App. Div. 848, 286 N. Y. S. 711, 271 N. Y. 640, 3 N. E. 2d 462, frequently cited, are not persuasive here, being based either on facts materially different or upon statutory provisions different from our own. The New York workmen's compensation law provides, for instance, that where the employer has made any "advance payments" of compensation the claim shall not be barred by failure of the employee to file a claim within the specified time, and also gives the administrative body certain discretion to entertain a claim even though it was not timely filed. (See Workmen's Compensation Law, Thompson's Laws of New York, part II, p. 1060, § 25; p. 1063, § 28.)

Appellee relies chiefly upon the case of *Rupp v. Jacobs*, 149 Kan. 712, 88 P. 2d 1102. The essential holding in that case will be indicated by the following quotations from the opinion:

"This is not merely a case in which an employer has provided lighter work, at the same wages, for an employee by reason of his incapacity to do his former work. *This is a case in which the respondent's doctor attempted to and did actually prescribe treatment for the workman.* . . . The respondent insurance carrier undertook not only to diagnose the ailment of the workman. It did more than that. It definitely undertook to prescribe the treatment for his specific ailment. *True, the treatment it recommended was not medicine, but it was nevertheless a definitely prescribed treatment.* It was treatment as

truly as though claimant had been directed to take and had taken various modern methods of treatment which are not medicinal in character. *The precise treatment which the insurance carrier recommended in this particular case was light work.* . . .

"Was everything which the employer paid actually paid to claimant on the basis of his ability to perform the labor which he previously had been employed to perform and' which he previously had performed? The admitted facts concede it, was not. *Claimant was at no time able to perform the work which entitled him to the wages he had previously received. That fact is conceded.* Yet he received the same amount per week" (pp. 716, 717). (Italics supplied.)

The distinctions between the instant case and the Rupp case are at once apparent. In the latter, the record clearly disclosed that as a specifically prescribed treatment for correction of his ailment (with the knowledge of the employer) the employee was given certain light work, and it was conceded by the employer that the employee was not able to perform work entitling him to the wages paid. No such vital elements exist in the instant case.

Appellee's condition makes a strong appeal to the sympathies. He was entitled to relief under the law. This court frankly shares in regret that by his own inaction he failed to bring himself within its benefits. But an unwarranted, unsound and harmful interpretation of the law cannot be made in order to help an individual no matter how worthy he may be.

We find from the record that following the injury a period many months in excess of ninety days transpired, and before any written notice of claim for compensation was served, within which the respondents neither paid for any medical aid for appellee nor made any other payments of compensation. It follows, therefore, that appellee's claim was barred under the law as above stated.

The judgment is reversed with directions to enter judgment for the respondents.