GUGLER, Respondent, v. INDUSTRIAL ACCIDENT BOARD, Appellant

No. 8467

Submitted January 4, 1945. Decided February 23, 1945.

157 Pac. (2d) 89

Mr. George Niewoehner of White Sulphur Springs for the Appellant.

40

42

Mr. J. D. Taylor of Hamilton and Messrs. Rankin and Acher of Helena for Respondent.

Mr. Paul T. Keller of Helena and Messrs. Coleman, Jameson,

Lamey, Kilbourne ·and Haughey of Billings, submitted briefs as amici curiae on petition for rehearing.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Plaintiff was accidentally injured while working for the city of Hamilton as sexton of the cemetery owned and operated by the city. The city was then operating under Plan III of the Workmen's Compensation Act. Plaintiff sought compensation from the Industrial Accident Board, which was denied. On appeal to the district court the order of the board was reversed. This appeal followed.

The only question before this court is whether plaintiff's claim is barred because of failure to present it within twelve months from the date of the happening of the accident as provided in Sec. 2899, Revised Codes. The board held that the claim was barred but the court held it was not.

The material facts to be considered are these: Plaintiff was injured on November 23, 1936, by having a piece of steel from a sledge hammer strike him in the eye as he was pounding a boulder. On the day of the accident he went to Dr. Hayward for treatment. Dr. Hayward examined the eye, rendered first aid care and treated the eye on each and every succeeding day in November, and on fifteen days in December, and on January 2nd, 5th and 9th, 1937. Gugler continued working during the time he was being treated and lost no wages.

The city clerk of Hamilton, being without forms on which to submit a report of the accident to the Industrial Accident Board, wrote to the board for blank forms. On December 7, 1936, the Industrial Accident Board received from the employer city a report of the injury on a printed form supplied by the board. The report was dated December 2nd, 1936, and signed on behalf of the employer city by its clerk, C. H. Raymond. The report stated that the accident was occasioned by "steel chip off of hammer while breaking a rock. Steel chip striking and cutting eye;" that Dr. Herbert Hayward is the attending physician and that the probable length of the dis-

ability would be two weeks. Mr. Gugler testified that he was present at the time the city clerk made out the report and that he supplied the information to the clerk regarding the accident.

On December 18, 1936, the board received a report from Dr. Hayward. The report stated that a "flying piece of steel from hammer struck and cut eye;" that the injury consisted of "laceration of cornea, deep and catching edge of iris caused by flying piece of steel." His report estimated that the disability would likely exist for three or four weeks. On January 15, 1937, the board received a written claim under oath from the doctor for services for the treatment of plaintiff amounting to $58, which was audited, approved, and, with plaintiff's knowledge, paid by the board.

Plaintiff continued to work, has lost no wages and at the time of the hearing in the district court on January 12, 1943, was still employed. No other claim than the one filed by Dr. Hayward was filed with the board until February 13, 1939, at which time plaintiff had learned that he had lost the sight of one eye. There was evidence that at first all the parties involved, including the employer city, its mayor and city clerk, the attending physician and plaintiff, thought the injury to plaintiff's eye was relatively trivial and that within a short time the eye would return to normal functioning. The condition of the eye did not improve as expected and about a year and seven months after the accident plaintiff again consulted Dr. Hayward and other doctors. On January 12, 1939, Dr. E. S. Murphy of Missoula removed a steel splinter from the eye. This was the first information that plaintiff or anyone else had that a foreign body had become lodged in the eye. On January 14, 1939, Dr. Murphy wrote the board as follows: "Mr. Chester Gugler has been gradually losing the sight of his left eye as the direct result of an injury to it in November of 1936. I recommend reopening of the case and request permission to send him to a competent ophthalmologist." On December 6, 1940, Dr. Ray W. Key of Missoula reported to the board that he had examined plaintiff and that in his opin-

ion the left eye was of little use, and that it probably would atrophy within a year or so, menacing the right eye by sympathetic ophthalmia.

The court held that the verified claim of the doctor and the reports filed with the board by the employer and doctor constituted a substantial compliance with Sec. 2899. Sec. 2899, Revised Codes, provides: "In case of personal injury or death, all claims shall be forever barred unless presented in writing under oath to the employer, the insurer, or the board, as the case may be, within twelve months from the date of the happening of the accident, either by the claimant or some one legally authorized to act for him in his behalf."

Plaintiff did not direct Dr. Hayward to present a claim for him but as noted above Dr. Hayward, with plaintiff's knowledge, presented a claim for doctor services which was approved by the board and paid. The claim for doctor services is in law a part of the compensation for the injury to the workman. Murray Hospital v. Angrove, 92 Mont. 101, 10 Pac. (2d) 577; Liest v. United States F. & G. Co., 100 Mont. 152, 48 Pac. (2d) 772.

It is contended by the board that the claim presented by Dr. Hayward under Sec. 2917 was his own claim and that it has nothing to do with the claim of plaintiff. That is not correct. In Murray Hospital v. Angrove, supra, in discussing the provision of Sec. 2917, which relates to doctor services, this court said [92 Mont. 101, 10 Pac. (2d) 580]: "This provision is for the restoration of the injured employee, and is comparable to repairs of machinery or restoration of the plant after injury by fire; it applies, however, only in case the injury received is such as would entitle the injured person to compensation, as it refers back to the 'injury' theretofore discussed in the act and for which provision is made for compensation. It is a part of the compensation for the injury. Central L. & C. Works v. Industrial Comm., 290 Ill., 436, 125 N. E. 369; Harper on Workmen's Compensation (2d Ed.) 294."

Our statute clearly treats the medical fees as part of the compensation. Thus Sec. 2919 provides in part as follows: "Compensation, other than medical, surgical, hospital and burial benefits provided shall run consecutively." Sec. 2918 in treating of "compensation" uses the phrase "except as may be required by the provisions of the preceding section." And in Sec. 2920 the word "compensation" is qualified by the phrase "other than that provided in Sec. 2917." These statutes make it clear that the legislature regards the claim for medical services as a part of the compensation due to the injured employee as was held in the Angrove case.

Since the question has already been decided by this court decisions of other jurisdictions are of little moment, but it is noteworthy that the great weight of authority elsewhere sustains the conclusion in the Angrove case. Thus in the note in 144 A. L. R. p. 617, it is said: "Where the facts are sufficient to show that an employer or his insurance carrier has furnished an injured employee medical and hospital services, it is generally held that this constitutes a payment of compensation, or a waiver which suspends the running of the time for filing a claim for compensation."

Of the cases there cited the following squarely hold that the payment for medical or hospital services constitutes payment of "compensation": Industrial Commission v. Globe Indem. Co., 1923, 74 Colo. 52, 218 Pac. 910; Royal Indem. Co. v. Industrial Commission, 1930, 88 Colo. 113, 293 Pac. 342; Industrial Commission v. Lockard, 1931, 89 Colo. 428, 3 Pac. (2d) 416; Frank v. Industrial Commission, 1935, 96 Colo. 364, 43 Pac. (2d) 158; Jackson v. Industrial Commission, 1922, 302 Ill. 281, 134 N. E. 749; Yellow Cab Co. v. Industrial Commission, 1925, 315 Ill. 235, 146 N. E. 160; J. F. Imbs Mill Co. v. Industrial Commission, 1927, 324 Ill. 416, 155 N. E. 380; Richardson v. National Ref. Co., 1933, 136 Kan. 724, 18 Pac. (2d) 131; Ketchell v. Wilson & Co., 1933, 138 Kan. 97, 23 Pac. (2d) 488; Taylor v. Missouri P. R. Co., 1937, 146 Kan. 668, 73 Pac. (2d) 62;

Chamberlain v. Bowersock Mills & Power Co., 1939, 150 Kan. 934, 96 Pac. (2d) 684, 129 A. L. R. 654; Bishop v. Dolese Bros. Co., 1942, 155 Kan. 288, 124 Pac. (2d) 446; Pittman v. Glencliff Dairy Products Co., 154 Kan. 516, 119 Pac. (2d) 470, 144 A. L. R. 600; Elsas v. Montgomery Elev. Co., 1932, 330 Mo. 596, 50 S. W. (2d) 130; Parker v. St. Louis Car Co., Mo. App., 1940, 145 S. W. (2d) 482; Mussler v. American Car & Foundry Co., Mo. App., 1941, 149 S. W. (2d) 429; Martensen v. Schutte Lumber Co., 1942, 236 Mo. App., 1084, 162 S. W. (2d) 312; Baade v. Omaha Flour Mills Co., 1929, 118 Neb. 445, 225 N. W. 117; Gould v. Champeney & Turk, 1937, 249 App. Div. 911, 292 N. Y. S. 530; Gabrielli v. New York, 1940, 258 App. Div. 1015, 16 N. Y. S. (2d) 866; Kloberdanz v. Sheffield Farms Co., 1940, 260 App. Div. 823, 22 N. Y. S. (2d) 361.

A few cases are there cited as taking the opposite view. If we had any doubt on the point it would be resolved by Sec. 2964, which commands us to construe the Act liberally. "Liberal construction of the act is commanded in order that the humane purposes of the legislation shall not be defeated by narrow and technical construction." Tweedie v. Industrial Acc. Bd. 101 Mont. 256, 53 Pac. (2d) 1145, 1148. "Obviously the intention of such requirement is for the benefit and protection of beneficiaries under the law." Edwards v. Butte & Superior Min. Co., 83 Mont. 122, 270 Pac. 634, 637. To construe the Act liberally means with a view to accomplish the result intended. Dosen v. East Butte Copper Mining Co., 78 Mont. 579, 254 Pac. 880; Grief v. Industrial Accident Fund, 108 Mont. 519, 93 Pac. (2d) 961. "The act calls for speedy adjustment of accident cases, regardless of technical forms and requirements." Shugg v. Anaconda C. M. Co., 100 Mont. 159, 46 Pac. (2d) 435, 439. Or as Judge Callaway stated in his specially concurring opinion in Radonich v. Anaconda Copper Min. Co., 91 Mont. 437, 8 Pac. (2d) 658, 661: "The intention of the legislature was to get away so far as practicable from the technical practice and procedure which under our present system needs must govern the operation of a court. The Industrial

Accident Board is a layman's court. It is in a measure a rusticum forum, as Chancellor Kent dubbed a board of arbitration. The intention of the act is to make practice and procedure before the board as simple as possible. The act calls for the speedy adjustment of industrial accident cases, regardless of technical forms and requirements.''

To construe a statute so as to bar a claim before it has accrued is contrary to the principle of liberal interpretation (Bianco v. Industrial Accident Comm., Cal. Sup., 150 Pac. (2d) 806, 809), if, indeed, that may constitutionally be done at all. In that case the court observed: ''In order that the beneficial purposes of the Workmen's Compensation Law may not be destroyed, the provisions on limitation should not be interpreted in a manner which will result in the right being lost before it accrues unless the language of such provision clearly compels such interpretation.''

It is true that under Sec. 2917 the board in Plan III cases pays for the services of the doctor, but the claim in truth and in fact is that of the injured employee. In this case the injured workman conducted the negotiations for the services of the doctor and himself became liable for such services with the right of indemnity against the fund as a part of his compensation. That the claim for medical care is a part of the compensation of the employee and not a separate claim of the doctor is evidenced also by the fact that under Sec. 2917 the maximum of the doctor services for which the fund in responsible is $500 and the employee is vitally interested in holding the doctor fees down so that the maximum will not be reached sooner than absolutely necessary. Further evidence that a claim for medical services is a part of the claim of the injured employee is the fact that nowhere in the Act is provision made for the filing of claims on the part of physicians for medical services furnished to injured employees. Before the claim for doctor services could be paid too, the board must have been satisfied that the injuries were caused by an accident arising out of and in the course of the employment. Murray Hospital v. Angrove, supra.

By paying the bill of Dr. Hayward, the board must have made sufficient investigation to have found that the injuries to plaintiff were caused by an accident arising out of and in the course of the employment and that the case was one within the Act, and the board was chargeable with knowledge of the fact that the injuries might increase to the point where the plaintiff would become entitled to further compensation.

The evidence shows, and the court found, that immediately ██ ██ after the accident the city clerk and mayor of the city of Hamilton, the employer, informed plaintiff that it was not necessary for him to file a claim with the board; that there was nothing for him to do in the matter; and that "it had all been taken care of by Dr. Hayward and the city clerk." It should be noted that Sec. 3006 makes it the duty of the doctor to lend all necessary assistance in making application for compensation. It is clear that plaintiff accepted and relied upon the doctor's action. By his silence and failure to take any affirmative action when advised as above, plaintiff will be deemed to have acquiesced in and ratified whatever Dr. Hayward had done in regard to filing a claim. This is subject to the qualification stated in the case of Rohde v. State Ind. Acc. Comm. 108 Or. 426, 217 Pac. 627, and Taslich v. Industrial Comm., 71 Utah 33, 262 Pac. 281, that the person ratifying has the power at the time to do the act ratified. Plaintiff here had that power at the time because it was within a month or two after the accident. Subsequent ratification is equivalent in law to prior authorization. The board therefore had jurisdiction of plaintiff's claim. It entertained jurisdiction by approving and paying the claim to the extent that it covered the doctor services. Having once assumed ██ jurisdiction of the claim such jurisdiction continued in it by virtue of Sec. 2956 when, as here, later developments revealed an increase in disability over what the facts upon first impression indicated. In other words, at first plaintiff's only claim for compensation was his doctor bill, since he had lost no wages, but later developments disclose that he has became totally

blind in one eye, entitling him to compensation under Sec. 2920, Revised Codes, regardless of the fact that he has lost no wages.

The case of Rohde v. State Ind. Accident Comm., supra, is relied upon as supporting the view that there could be no ratification. The facts of that case are far different from those here. In that case plaintiff not only did not ratify but expressly repudiated the claim attempted to be made for him because he desired to retain the right to bring an action without reference to the Workmen's Compensation Act. These features of that case are well pointed out in the dissenting opinion in Taslich v. Industrial Comm., supra.

We hold that under the facts here disclosed, plaintiff ratified the act of Dr. Hayward in presenting the claim which he did. That in law embraced a part of the compensation due to plaintiff. The board acquired and exercised jurisdiction over that claim and by virtue of Sec. 2956 it retains jurisdiction to award full compensation.

The court was right in holding that there was a substantial compliance with Sec. 2899.

The judgment is affirmed.

Chief Justice Johnson and Associate Justice Adair concur.

Mr. Justice Cheadle (dissenting):

I dissent, and do so reluctantly because the record discloses very apparently that the claimant here was misled by his employer and physician, and that the Industrial Accident Board displayed a regrettable lack of diligence in protecting his interests, first in not providing him with a form on which to present his claim, and, second, in holding up disposition of the matter for nearly two years after his claim was attempted to be filed.

No claim for compensation was filed by plaintiff, or in his behalf, in accordance with the provisions of Sec. 2899, Revised Codes 1935, until February 13, 1939. Under date of June 17, 1938, over a year and a half after the accident, plaintiff wrote the following letter to the board:

 "Hamilton, Montana,
 "June 17, 1938.

"Industrial Accident Board
"George Niewoehner, Secretary
"Helena, Montana
"Dear Sir:

"I suffered from an eye injury while in the employ of the City of Hamilton in the winter of 1936 and when it ceased to pain me the town clerk notified you of termination of disability. I could not see with the eye for some time after it was hurt but thought that vision would return to normal. It has not and there is very little sight in the injured eye.

"I am writing you at this time to see if you will give Dr. Hayward (who took care of the case) authority to send me to eye specialist.

 "Very truly yours,
 "Chester W. Gugler."

The board replied to this letter as follows:

"Chester W. Gugler "June 22, 1938.
"Hamilton, Montana
"Dear Sir:

"In reply to your letter of June 17th, we are sorry to advise you the Workmen's Compensation Act only provides medical treatment during the first six months following the date of the accident. Therefore, it is impossible to pay for treatment out of the Fund when that treatment is received after six months from the date of the accident.

"The compensation law further provides that an injured man must make a claim for compensation within one year from the date of the accident, or his case will be barred.

"Our records show that your claim was not filed, and therefore, we must inform you that it will be impossible to pay compensation.

 "Very truly yours,
 "Industrial Accident Board.
 "Secretary."

Plaintiff's claim (filed February 13, 1939) states with reference to the injury "That * * * a piece of steel spit from the said hammer, and lodged in my left eye, from which I have suffered considerably since that time, and which will be necessary to have removed by an eye specialist."

In reply to a letter from plaintiff's attorney, enclosing the claim, the board advised the attorney that the claim was barred because not filed within one year from the date of the accident, and that "we cannot allow payment of compensation."

A hearing on the claim was held by the board on November 29, 1940, and by an order dated August 22, 1942 the claim was denied and dismissed. Petition for rehearing was denied by the board on September 9, 1942, and on September 29, 1942, notice of appeal from the aforementioned order denying the claim and the order denying petition for rehearing was filed.

On April 21, 1943, findings and conclusions were adopted and filed by the court, and on April 24, 1943, judgment was entered in favor of plaintiff and against defendant in the sum of $1,442, being compensation at the rate of $14.42 per week for a period of 100 weeks.

Nineteen specifications of error are assigned by appellant. In view of the majority opinion it is necessary to discuss only one of the conclusions upon which the trial court based its decision, namely, "That the said written report filed with the said Board on December 18, 1936, and the written claim for expenses filed with the said Board on the 15th day of January, A. D. 1937, by said Dr. Hayward, constituted and was a substantial compliance with the limitations contained within the purview of Sec. 2899 of the Revised Codes of the State of Montana, 1935."

Sec. 2899, Revised Codes 1935, provides: "In case of personal injury or death, all claims shall be forever barred unless presented in writing under oath to the employer, the insurer, or the board, as the case may be, within twelve months from the date of the happening of the accident, either by the claimant or some one legally authorized to act for him in his behalf."

It is conceded by respondent that no claim was filed by him

within the period prescribed, and the record contains no evidence that any claim was filed within such period by anyone legally authorized to act for him in his behalf. Respondent, however, contends, and the court below held, that the filing of the employer's report and of the physician's report and claim, above noted, constituted a compliance with the requirements of this section. This contention has no merit. To so hold would render Sec. 2899, as well as Sec. 3006 (which provides that where a workman is entitled to compensation under Plan No. 3 he shall file with the board his application therefor), meaningless and surplusage in all cases where employer's and physician's reports are filed. Provisions for filing such reports are found in Secs. 2934 and 2917, respectively. Such reports do not constitute the basis for awarding compensation such as is contemplated by these sections, that is, the weekly payments specified in the Act.

In construing similar provisions of the Oregon Workmen's Compensation Act, in a case where the employer had submitted a report of injury but no claim was submitted by the injured workman, the Supreme Court of Oregon, in Rohde v. State Industrial Accident Commission, 108 Or. 426, 217 Pac. 627, 629, said:

"It has been argued that the fact that the employer and the physician both made a report confers jurisdiction upon the Commission. * * * Under a statute similar to our own the Supreme Court of Washington thus states the principle: [Quoting Stertz v. Industrial Ins. Comm., 91 Wash. 588, 158 Pac. 256, Ann. Cas. 1918B, 354.]

"If the injured workman files his application in the manner prescribed by the statute, his right to compensation is neither aided nor prevented by the filing or non-filing of reports by the physician and employer. The application of the injured employee is the exclusive formula by which the Commission gains jurisdiction in any particular case. * * * All the facts upon which the applicant's claim for compensation might have been based * * * were likewise stated but more fully in the original

report of the employer, noted above; but, as we have seen, the statement of the employer is not a basis for compensation, nor can it affect the rights of the applicant one way or the other.'' Taslich v. Industrial Commission, 71 Utah 33, 262 Pac. 281, 284; Smith v. State Industrial Accident Commission, 144 Or. 480, 23 Pac. (2d) 904, 25 Pac. (2d) 1119.

As is said by the Supreme Court of Oregon in Rohde v. State Industrial Accident Commission, supra, 217 Pac. at p. 630, a case involving power of the commission to waive the provisions of a somewhat similar statute: ''Those precedents have no application to a statute like ours. While private parties such as those described in those enactments may waive their own rights, public officers cannot waive the rights of the people. In this instance the commissioners could not waive the filing of a valid application by the injured employee as a basis for disbursing public funds. * * * The commissioners are public officers, charged with the administration of that trust fund under what is known as the Workmen's Compensation Act. This law was enacted under the police power of the state, which is a governmental and not a proprietary function. Los Angeles Gas [& Electric] Co. v. Los Angeles, D. C., 241 F. 912. Neither the state nor any of the commissioners claim any proprietary or individual interest in the fund. Commissioners function as any other public officers operating under state authority. The well-settled rule is that in all governmental affairs, as distinguished from mere proprietary matter, neither the state nor any of its officers acting in a governmental capacity are estopped by any act of any such officer.''

This rule is followed in the later Oregon case of Rosell v. State Industrial Accident Commission, 164 Or. 173, 95 Pac. (2d) 726, 734, where the court said: ''The Oregon workmen's compensation law makes provision for the injured workman or, in case of his death, for his beneficiaries, unknown to the common law. The legislature had a right to append such conditions as it chose to the privilege of receiving compensation. Lough v. State Industrial Accident Commission [104 Or. 313, 207 Pac.

354, 355] ; Demitro v. State Industrial Accident Commission, 110 Or. 110, 223 Pac. 238; Pine v. State Industrial Commission, 148 Okla. 200, 298 Pac. 276, 78 A. L. R. 1287, * * *. One of the conditions the law imposes on the right to receive compensation is that applications therefor must be filed within certain designated time. Neither the commission nor the courts have authority to waive this requirement of the statute."

No action of the board in this instance can be construed as a waiver of the requirements of Sec. 2899, even though the board might legally waive same. To the contrary, every action and proceding of the board concerning the attempted enforcement of the claim demonstrates its determination to strictly adhere to such requirements.

This court has repeatedly held that Sec. 2899 is mandatory and that a compliance with its requirements is indispensable to the existence of the right to maintain procedings to compel the payment of compensation. Chmielewska v. Butte & Superior Mining Co., 81 Mont. 36, 261 Pac. 616; Williams v. Anaconda Copper Mining Co., 96 Mont. 204, 29 Pac. (2d) 649; and see Moody v. State Highway Dept., 56 Idaho 21, 48 Pac. (2d) 1108.

I have in mind the mandate of the legislature, as expressed in Sec. 2964, Revised Codes 1935, that the Workmen's Compensation Act be liberally construed in order to promote justice. But, as is said by this court, speaking through Mr. Chief Justice Callaway, in the Chmielewska case, supra [Mont. 36, 261 Pac. 617] : "In the construction of a statute the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted." Sec. 10519, Revised Codes 1935.

The statute under consideration is clear and unambiguous as to the date when the period of limitation begins, and therefore needs no interpretation. Clark v. Olson, 96 Mont. 417, 431, 31 Pac. (2d) 283. Workers suffering industrial accidents, whose compensable injuries do not become apparent during the

period prescribed, can preserve their rights by filing a claim within such period. Then, should the injury subsequently develop into one compensable by payment of disability benefits, the board would have jurisdiction to grant relief under Sec. 2956, Revised Codes 1935. In this case claimant knew, or should have known, within the limitation period, that his injury was or would become permanent. It seems clear from the evidence that the failure to apply for compensation was caused by the ignorance of claimant and his advisors that the law required the filing of a claim by him.

The majority opinion effectively nullifies the plain mandate of Secs. 2899 and 3006, supra. By the simple expedient of deciding that the payment for medical services by the board (as it is required to do by Sec. 2917) constitutes assumption of jurisdiction of the case for all purposes, the majority opinion holds that the submission of a physician's bill constitutes the filing of a claim for compensation by the claimant, and puts on the board the duty and obligation of investigating every superficial and noncompensable cut and scratch which may be treated by a physician. The majority opinion ignores the statutory requisite that the workman's claim in writing under oath be presented to the board, either by the claimant or someone legally authorized to act for him in his behalf. It concedes that no claim was filed by the claimant or anyone legally authorized to act for him, and circumvents that requirement by the fiction that claimant, by remaining silent, ratified the unauthorized act of the physician in filing a claim for payment for medical services performed. Does Sec. 2899 mean that a person filing a claim for another be authorized to do so at the time the claim is filed? Or does it mean that the claim, at the time of its filing, be unauthorized, but subject to later ratification? The answer is obvious. The act requires the board and not the claimant to furnish (and by implication to pay for) medical services, and the physician does nothing more than to claim such payment. This conclusion is further supported by the fact that the physician's report and claim gave the board no information upon

which it could possibly determine that the injured workman had or might have a compensable claim — compensable in the sense that he was or might be entitled to reimbursement for loss of time. For instance, it does not purport to advise the board that the injury arose out of or in the course of his employment.

Numerous cases are cited in the majority opinion to the effect that the furnishing of medical services is to be regarded as compensation. Many more are in the books. But they do not hold that this constitutes compensation in the sense contemplated by Secs. 2899 and 3006. They are based upon statutes dissimilar to these, and mostly hold to the effect that the furnishing of such services either tolls the running of the limitation statute or estops reliance upon it because of waiver. The doctrine of waiver and estoppel has no application to this case.

A reading of the Compensation Act reveals what the legislature intended should be meant by "compensation" payable to an injured workman for which he is required to file claim by Sec. 2899. It means disability indemnity in the form of money payments, and nothing else. Secs. 2949, 2950, 2951 and 2952.

"The right to compensation is purely statutory in its nature, and we must resort to the statute to determine its extent and limitations. * * * Upon a reading and comparison of the various sections of the law, it appears clearly that it gives two independent and distinct benefits for the injured workman, (a) compensation for lost time, and (b) the medical attendance and hosptalization to repair, as far as possible, the injury. As we have seen in a number of cases, and particularly in the Sorenson case [Sorenson v. Six Companies, 53 Ariz. 83, 85 Pac. (2d) 980], compensation is payment for the lost time of the injured workman. The award must be on the basis of monthly payments. * * *

"We are of the opinion that the legislature intended to differentiate between compensation which, as we have held, is in lieu of lost wages and belongs solely to the injured employee, with no right of survival to his legal representative after his death, and medical attendance and hospitalization." Paramount

Pictures v. Industrial Commission, 56 Ariz. 217, 106 Pac. (2d) 1024, 1025.

The case of Miller v. Industrial Commission, 106 Colo. 364, 105 Pac. (2d) 404, was decided under the limitation of the Colorado Act, providing that claims shall be barred unless filed within six months after the injury, or within one year after death resulting therefrom. The Act provides that the limitation shall not apply to any claimant to whom compensation has been paid. Here the workman lived two days after the injury and the insurer paid medical and hospital bills for his care. The court held that payment of the medical and hospital bills under the circumstances did not constitute payment of compensation so as to waive the statutory limitation on the filing of a claim.

The purpose of Sec. 2899 is to notify the board that a compensable injury has been suffered, that compensation will be claimed by the injured workman, and to require that the claim therefor be filed in time to permit an early investigation while the facts are fresh in the minds of available witnesses.

I concede that in the circumstances of this case, the denial of compensation would be unfortunate and would work a hardship upon the injured man. That fact, however, cannot justify this court's assumption of legislative powers. I deem it the duty of the court to give full effect to the legislative enactments applicable, in this case clear. The remedy for unfortunate situations as we find here is with the legislature, not the courts.

Mr. Justice Morris.

I concur in the foregoing dissenting opinion of Mr. Justice Cheadle.

Petition for rehearing denied April 5th, 1945.